423 F.2d 96
 William MOORE, by and on behalf of himself and all other employees of Universal Coordinators, Inc., similarly situated, Howard Artrip, Robert Maibach and Clyde C. Snyder, Harry Harpster
v.
UNIVERSAL COORDINATORS, INC., a corporation
William Moore, by and on behalf of himself and all other employees of Universal Coordinators, Inc., similarly situated, Appellants.
 No. 18017.
 United States Court of Appeals, Third Circuit.
 Argued December 5, 1969.
 Decided March 10, 1970.
 
 Stewart R. Jaffy, Clayman, Jaffy & Taylor, Columbus, Ohio (Rothbard, Harris & Oxfeld, Abraham L. Friedman, Newark, N. J., Herschel Kriger, Canton, Ohio, David Clayman, Columbus, Ohio, on the brief), for appellants.
 Frederic C. Ritger, Jr., Van Riper, Belmont & Villanueva, Newark, N. J., for appellee.
 Before GANEY, SEITZ and ALDISERT, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Plaintiffs were employed as truck drivers by defendant Universal Coordinators, Inc. (Universal) and were "leased" to International Paper Company, a private motor carrier. They appeal from an order of the district court granting summary judgment in favor of defendant Universal in an action brought under § 16(b) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b) to recover overtime wages for hours worked in excess of 40 hours per week.
 
 
 2
 Universal's sole defense is that the overtime pay requirements of the FLSA do not apply to plaintiffs because of the following exemption in § 13(b) (1) of the FLSA, 29 U.S.C. § 213(b) (1):
 
 
 3
 "The provisions of section 7 [relating to overtime pay] shall not apply with respect to * * * any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act * * *."
 
 
 4
 Section 204(a) (3) of the Motor Carrier Act, 49 U.S.C. § 304(a) (3), in turn, permits the Secretary of Transportation:[1]
 
 
 5
 "To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees * * *."
 
 
 6
 The sole issue on this appeal is the correctness of the district court's determination that the FLSA overtime pay provisions do not apply to plaintiffs because the Secretary of Transportation had power to establish their qualifications and maximum hours.
 
 
 7
 There is no dispute as to the facts. Universal's business is described in the affidavit of its President, Louis Kalmar, as follows:
 
 
 8
 "Its principal operation is in the supplying of labor to other corporations, particularly truck drivers to private carriers.
 
 
 9
 "In the operation of the defendant's business, we recruit and administratively employ competent truck drivers. In turn, we lease the drivers on a long term basis to other companies who wish to perform their own transportation as private carriers.
 
 
 10
 "When the drivers are leased to a private carrier, the major function which the defendant corporation performs with relation to such drivers is the preparation of payrolls and the actual payment of wages.
 
 
 11
 "All operational control over the drivers is exercised by the private carrier who, so long as the employment lasts, supervises exclusively the day to day use of the drivers including such matters as routing, scheduling, loading, unloading and general dispatch. The carrier in addition, is solely responsible for all instructions to the driver relating to governmental safety regulation compliance. As an example of the latter, the carrier arranges for and pays all costs involved in physical examinations required by the Department of Transportation and the Interstate Commerce Commission.
 
 
 12
 "With specific reference to the drivers who are the plaintiffs in this action, they were all employed by International Paper Company as over the road drivers under the same general terms as have been hereinbefore set forth."
 
 
 13
 During the period in question plaintiffs drove trucks solely for International Paper Company. They were hired by Universal under a collective bargaining agreement between Universal and Teamsters Local Union No. 40. Universal, in turn, had a written agreement with International Paper Company wherein it agreed to furnish it daily such drivers as it required. The agreement provided further that the drivers were to be competent, experienced, and satisfactory to International Paper and would possess the driver qualifications required by the Interstate Commerce Commission.[2] In exchange for this service, International Paper agreed to pay Universal a service charge in accordance with a schedule appended to the agreement. International Paper was to have exclusive control and direction over all drivers furnished to it by Universal. Plaintiffs, however, were paid by Universal at a rate in accordance with the collective bargaining agreement between Universal and the Teamsters. Both parties agree that Universal is not a carrier subject to regulation by the Secretary, and that International Paper is a carrier subject to such regulation. See 49 U.S.C. § 303(a) (17).
 
 
 14
 Plaintiffs' theory may be expressed as follows:
 
 
 15
 (1) The only exemption from the FLSA relied on by Universal relates to employees whom the Secretary has power to regulate under section 204 of the Motor Carrier Act.
 
 
 16
 (2) The Motor Carrier Act permits the Secretary to regulate the hours and qualifications of employees of carriers only.
 
 
 17
 (3) Plaintiffs are employees of Universal, which is not a carrier.
 
 
 18
 (4) Therefore, the Secretary has no power to regulate the hours and qualifications of plaintiffs, and the exemption does not apply.
 
 
 19
 Universal, on the other hand, asserts that plaintiffs' theory is flawed by its assumption that the motor carrier exemption cannot apply once it is shown that plaintiffs are employees of Universal, a non-carrier. The relevant inquiry, Universal argues, is whether plaintiffs should also be considered "employees" of International Paper, a carrier, for purposes of determining the Secretary's power to regulate their hours and qualifications pursuant to section 204 of the Motor Carrier Act. Universal contends that the term "employees" is broad enough to include drivers who operate a carrier's trucks in interstate commerce under the carrier's direction but are paid by someone else.
 
 
 20
 The district court adopted Universal's analysis and concluded that the plaintiffs were "employees" of International Paper for purposes of regulation by the Secretary.[3] We agree with Universal and the district court that the relevant inquiry is whether plaintiffs should be considered "employees" of International Paper for purposes of determining whether the Secretary may prescribe their qualifications and maximum hours of service. If plaintiffs can be considered "employees" of International Paper, a carrier, then the overtime provisions of the FLSA do not apply — notwithstanding the fact that plaintiffs are also employees of Universal, a noncarrier.
 
 
 21
 The Secretary has promulgated extensive regulations prescribing qualifications of drivers (49 C.F.R. § 391.1 et seq.) and maximum hours of service of drivers (49 C.F.R. § 395.1 et seq.). It is clear from an examination of these regulations that they were intended to apply to "leased" drivers such as plaintiffs, who drive trucks under the control and direction of carriers. As to driver qualifications, for example, 49 C.F.R. §§ 391.2 & 391.8 provide that "* * * no person shall drive, nor shall any motor carrier require or permit any person to drive any motor vehicle unless [he possesses certain qualifications]."[4] As to maximum hours of service, 49 C.F.R. § 395.3 provides that "* * * no motor carrier shall permit or require any driver used by it to drive [in excess of certain hour limitations]." The question then remains: Has the Secretary exceeded his power in regulating the qualifications and hours of "leased" drivers such as plaintiffs? While there are no appellate decisions precisely on point, several Supreme Court cases have laid down precepts relevant to our inquiry. In United States v. American Trucking Associations, Inc., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), the Supreme Court was called upon to decide whether section 204 of the Motor Carrier Act empowered the I.C.C. (now the Secretary of Transportation) to set qualifications and maximum hours of service for all employees of motor carriers, or whether the authorization extended only to those employees whose activities affect safety of operation. The Court concluded that the word "employees" — undefined in the Act — must be construed in light of the Motor Carrier Act's dominant purpose; i. e., to enable the I.C.C. to promote safety of operation. Hence, the I.C.C.'s regulatory power was limited to those employees whose activities affect safety of operation.
 
 
 22
 Addressing itself to the problem of reconciling the policy behind the Motor Carrier Act with that of the later-enacted FLSA, the Supreme Court pointed out in Levinson v. Spector Motor Service, 330 U.S. 649, 661-662, 67 S.Ct. 931, 938, 91 L.Ed. 1158 (1947):
 
 
 23
 "The logic of the situation is that Congress, as a primary consideration, has preserved intact the safety program which it and the Interstate Commerce Commission have been developing for motor carriers since 1936. To do this, Congress has prohibited the overlapping of the jurisdiction of the Administrator of the Wage and Hour Division, United States Department of Labor, with that of the Interstate Commerce Commission as to maximum hours of service. Congress might have done otherwise. It might have permitted both Acts to apply. There is no necessary inconsistency between enforcing rigid maximum hours of service for safety purposes and at the same time, within those limitations, requiring compliance with the increased rates of pay for overtime work done in excess of the limits set in § 7 of the Fair Labor Standards Act. Such overlapping, however, has not been authorized by Congress and it remains for us to give full effect to the safety program to which Congress has attached primary importance, even to the corresponding exclusion by Congress of certain employees from the benefits of the compulsory overtime pay provisions of the Fair Labor Standards Act. When examined from the point of view of the Motor Carrier Act alone, much light is thrown on the meaning of its § 204 by the interpretation given to it and the applications made of it by the Interstate Commerce Commission."
 
 
 24
 Thus it is clear that in interpreting these statutes we must recognize that Congress has attached primary importance to the regulation of employees of carriers in the interests of safety.
 
 
 25
 In view of the foregoing, we think the Secretary acted within his statutory authorization in promulgating regulations for driver qualifications and maximum hours that apply to leased drivers such as plaintiffs. It is a familiar maxim of statutory construction that a statute should not be construed so as to defeat its obvious intent. We are faced with the ambiguous word "employees." That word, as the Supreme Court has pointed out in this context, "is not a word of art. It takes color from its surroundings." United States v. American Trucking Ass'n, 310 U.S. at 545, 60 S.Ct. at 1065. We know that Congress was primarily concerned with giving the Secretary power to regulate carriers' employees in the interest of safety of operation. Drivers affect safety of operation more dramatically than any other employee. Moreover, the drivers involved here drove trucks solely for International Paper, a motor carrier. While in the service of the carrier, they were under its exclusive control and direction. In our view, they were in every relevant sense "employees" of the carrier.
 
 
 26
 Were we to adopt plaintiffs' suggested construction of "employees" as used in the Motor Carrier Act and hold that the Secretary has no regulatory power over drivers leased to carriers, we would defeat the intent of that statute. The Secretary's power to promote safety of operation would be rendered nugatory if he were powerless to prevent a carrier from using unqualified and overtired drivers simply because the drivers are technically the employees of a manpower-supply agency. Since plaintiffs are subject to the Secretary's qualifications and hours regulations, it is clear that they may not take advantage of the FLSA overtime provisions. See Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947); Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947).
 
 
 27
 Plaintiffs rely heavily on the case of Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786 (1946). The facts in that case are similar to those here — but there are significant and controlling differences which make it inapposite. Boutell also was a suit based on the overtime pay provisions of the FLSA, with the motor carrier exemption asserted as a defense. The employees involved were mechanics who worked for the F. J. Boutell Service Company. The Service Company was engaged exclusively in greasing, repairing, servicing and maintaining transportation equipment owned and operated by the F. J. Boutell Drive-Away Company, a motor carrier. The Service Company and the Drive-Away Company were wholly owned by the same four persons; however, it was stipulated that both companies were "separate and distinct" entities.
 
 
 28
 The Supreme Court held that the motor carrier exemption was inapplicable because
 
 
 29
 "the Commission's jurisdiction is limited to employees of `carriers' and the record here shows that the men in question are employees of the Service Company, which is not a carrier, rather than the Drive-Away Company, which is a carrier. This is true although the work these employees do is all supplied to the Drive-Away Company through the Service Company." 327 U.S. at 467-468, 66 S.Ct. at 634.
 
 The Court further pointed out that:
 
 30
 "The record contains no suggestion that the Interstate Commerce Commission or any other administrative body has found that these employees of the Service Company are or should be treated as employees of the Drive-Away Company for purposes of the Interstate Commerce Act. This case, therefore, is decided upon the basis that the parties have stipulated and the trial court has found that these employees are employees of * * * the Service Company * * *." 327 U.S. at 468, 66 S.Ct. at 634.
 
 
 31
 Moreover, the Court emphasized that the I.C.C. had ruled that it had jurisdiction only over mechanics employed by carriers and not those working in commercial garages. The Court deemed the common ownership of the two companies irrelevant and treated the case as though the employees involved merely worked in a separate commercial garage.
 
 
 32
 Thus, the Court in Boutell was faced with a situation where mechanics who were employed by and controlled by a separate and distinct maintenance company did work exclusively for one motor carrier — an arrangement that clearly put the mechanics beyond the I.C.C.'s power to regulate the qualifications and hours of employees of carriers. In our case the regulations are, of course, ample evidence of the Secretary's intention to regulate the drivers in question. In addition there was no suggestion in Boutell that the mechanics were under the exclusive control and direction of a motor carrier, as are the drivers here. On the facts present in Boutell the Supreme Court concluded that the mechanics were employees of the Service Company and not the carrier. Under the facts present in our case it is clear that the plaintiff drivers should be considered employees of International Paper for purposes of subjecting them to the Secretary of Transportation's qualifications and maximum hours of service regulations.
 
 
 33
 The order of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 This power was originally vested in the Interstate Commerce Commisson. However, Public Law 89-670, October 15, 1966, 80 Stat. 931, which created the Department of Transportation, transferred this power to the Secretary of Transportation
 
 
 [2]
 See note 1, supra
 
 
 [3]
 The district court opinion is presently unreported
 
 
 [4]
 Section 391.1 provides that:
 "Every motor carrier, and his or its officers, agents, representatives, and employees who drive motor vehicles or are responsible for hiring, supervision, training, assignment, or dispatching of drivers shall comply and be conversant with the requirements of this part [relating to driver qualifications]."
 Section 395.1, relating to maximum hours of service, contains a provision substantially identical to section 391.1.