# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 3, 2010

Lyle W. Cayce
Clerk

No. 09-10803

RAYMOND KEITH SONGER; CROX ALVARADO; VICTOR ARRINGTON; GEORGE E. EATON, JR.; DANIEL GARCIA, JR.; DEBRA SUE GARRISON; JOSE RAMON GUILAMO; LARRY HAZELTON; ANTRONE HENDERSON; SANDRA K. HENDERSON; DANIEL CLINTON HENLEY; JOHNNY ROBERT JARVIS; EDDIE JONES; ERIC C. MATTHEWS; BRIAN ALAN MCGLOTHIN; KAREN SUE PARENT; MONICA LENISE PERVIS; BOBBY JOE SCHRODER; COURTLAND DALE WALLACE; PERRY SCOTT WIGGINS, Individually and on behalf of other Employees similarly situated; FELIX VASQUEZ, Per Consent pursuant to 29 USC § 216(b),

Plaintiffs - Appellants

v.

DILLON RESOURCES, INC.; SUNSET LOGISTICS, INC.; SUNSET ENNIS, INC., doing business as Sunset Waxahaxie, Inc.,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before BENAVIDES, STEWART, and SOUTHWICK, Circuit Judges.

CARL E. STEWART, Circuit Judge:

No. 09-10803

Plaintiffs-Appellants, truck drivers who operate commercial trucks, sued Defendants-Appellees Dillon Resources, Inc., Sunset Logistics, and Sunset Ennis in Texas state court for unpaid overtime under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a). Both sides moved for summary judgment as to whether the FLSA motor carrier exemption, 29 U.S.C. § 213(b), applies to Defendants. The district court granted Defendants' motion, denied Plaintiffs' motion, and dismissed Plaintiffs' claims with prejudice. We AFFIRM.

## I. BACKGROUND

### A. Factual Background

Plaintiffs-Appellants are truck drivers who operate commercial trucks to haul materials to and from mines and quarries. Defendant-Appellee Dillon Resources, Inc. is a licensed staff leasing company who hires truck drivers and assigns them to work for trucking company clients. Defendant-Appellee Sunset Ennis is an interstate trucking company based in Waxahachie, Texas. Defendant-Appellee Sunset Logistics, based in Fort Worth, Texas, is a logistical support company to other third-party trucking companies, including Sunset Ennis, and engages in some trucking operations.

#### 1. The Relationship Between the Defendants

Dillon maintains staff leasing agreements with Sunset Logistics and Sunset Ennis (collectively, "the Sunset companies"). Under the agreements' terms, Dillon and the trucking companies share responsibility for the truck drivers and consider themselves joint employers of the drivers. The Sunset companies are responsible for the day-to-day supervision of and liability for the drivers and for recruiting, qualifying, training, disciplining, and terminating drivers assigned to them. Dillon reserves the right of direction and control over drivers assigned to the Sunset companies. It is responsible primarily for the payment of wages and payroll taxes and retains the right to hire, fire, discipline,

2

No. 09-10803

and reassign drivers. Dillon is compensated by clients such as the Sunset companies for recruiting and providing qualified drivers.

## 2. *Defendants' Trucking Operations*

Sunset Logistics and Sunset Ennis are authorized by the Department of Transportation (DOT) Federal Motor Carrier Safety Administration as common carriers of property by motor vehicle in interstate or foreign commerce. Sunset Logistics, on its own behalf and on behalf of Sunset Ennis, solicited and received interstate work from its customers.

Dillon hired Plaintiffs as truck drivers and assigned them to drive commercial trucks for Sunset Logistics and Sunset Ennis.[1] The drivers transported construction materials within the state of Texas. Some drivers also transported aggregate (i.e., sand, gravel, and crushed rock materials used in construction) across state lines into other states, such as Oklahoma, and from other states into Texas. Truck drivers for Sunset Logistics and Sunset Ennis also transported construction materials for the Sunset companies' customer, TXI, Inc. TXI owns and operates aggregate plants in Oklahoma and "ready-mix" concrete plants in Texas. TXI orders aggregate from its Oklahoma plants and ships them via rail from Oklahoma to the Dallas and Celina rail terminals. TXI hires third-party trucking companies, like the Sunset companies, to transport the aggregate from the rail terminals to its Texas ready-mix plants.

## 3. *Plaintiffs' Employment as Drivers*

As drivers, Plaintiffs must meet DOT and Federal Motor Carrier Safety Regulations (FMCSR) requirements prior to assuming their driving duties.

---

[1] Plaintiffs hired before January 19, 2007 were assigned to drive for Sunset Logistics. In January 2007, Sunset Logistics converted to logistical support as its primary business; Dillon then reassigned drivers from Sunset Logistics to Sunset Ennis. Accordingly, during the relevant time period, some plaintiffs worked for Sunset Logistics *and* Sunset Ennis, while some only worked for Sunset Ennis. At the time the lawsuit was filed, all the Plaintiffs were assigned to work as truck drivers for Sunset Ennis.

Plaintiffs must have a valid Class A commercial drivers license and meet the driver qualification requirements of FMCSR Parts 382 and 391.[2] Upon hire, Plaintiffs are issued the FMCSR Pocketbook, a compilation of relevant regulatory information. The drivers also participate in New Hire Safety Orientation to review the FMCSR and the difference between interstate and intrastate hours of service regulations. After being hired, Plaintiffs must record their hours of service and complete driver vehicle inspection reports pursuant to the FMCSR.

During the relevant time period, Plaintiffs received their assignments from a dispatch service before the start of their shifts. The dispatch notified the drivers regarding the number of loads they had been assigned and the loads' pick-up and delivery locations. No driver had a dedicated route. The assignments were based on various factors, including the driver's available hours (i.e., whether the driver has sufficient available hours to complete the load assignment and still remain within regulatory requirements regarding maximum hours driven) and customer requirements. Based on these factors, the loads for each truck driver were distributed indiscriminately—i.e., any driver could be called upon at any time to make an interstate or intrastate trip. The drivers' employment could be terminated if they refused an assignment.

## B. Procedural Background

In April 2008, Plaintiffs[3] sued Dillon, Sunset Logistics, and Sunset Ennis in Texas state court for unpaid overtime under the FLSA, 29 U.S.C. § 207(a).

___

[2] The requirements included: (1) meeting the general qualification for commercial truck drivers, 49 C.F.R. § 391.11–.15; (2) submitting to required background and character investigations, *id.* § 391.21–.27; (3) submitting to a road test or its equivalent, *id.* § 391.31–.33; and (4) submitting to physical qualifications and examinations including drug-testing requirements, *id.* § 391.41–.49.

[3] The lawsuit originated with 26 plaintiffs. At the time of the district court's order, 21 plaintiffs remained part of the action.

Defendants timely removed to the district court for the Northern District of Texas.

In June 2008, Plaintiffs filed a motion for notice to putative class members pursuant to 29 U.S.C. § 216(b), the FLSA collective action provision,[4] and a motion to toll the FLSA statute of limitations[5] pending the outcome of the motion. Plaintiffs argued that Defendants failed to pay overtime and that company policy encouraged working unpaid overtime by imposing financial penalties—e.g., failure to pay bonuses or a flat rate when there was no work—when drivers failed to complete all assigned deliveries on time. In July 2008, the district court denied both motions. The district court agreed with Defendants that Plaintiffs' affidavits only offered conclusory allegations that did not state personal knowledge of company-wide discrimination and did not demonstrate whether other putative class members wanted to opt in to the lawsuit. However, the district court declined to consider Defendants' remaining arguments.

In March 2009, Plaintiffs filed their first amended collective action petition. In April 2009, Defendants filed an answer in which they asserted, among other defenses, that Plaintiffs' claims were barred because the work they performed fell within the Motor Carrier Act (MCA) exemption to the FLSA.

Both parties moved for summary judgment on the issue of whether the MCA exemption applied to Defendants. In June 2009, the district court concluded that the MCA exemption applied to Sunset Logistics and Sunset Ennis, but that Dillon had not provided sufficient evidence to prove its

---

[4] The FLSA collective action provision states, in relevant part, "An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

[5] The FLSA provides for a two-year statute of limitations for a cause of action alleging unpaid overtime, and a three-year statute of limitations for a cause of action alleging willful failure to pay overtime. 29 U.S.C. § 255(a).

entitlement to the exemption. The district court also concluded that the drivers' duties fell within the Secretary of Transportation's ("Secretary") power, and therefore the exemption applied, but only to the four-month period in which each driver was engaged or could have been called to engage in interstate commerce. Accordingly, the district court held the motions in abeyance and ordered additional briefing regarding: (1) the MCA's exemption's applicability to each plaintiff, including competent summary judgment evidence; and (2) whether Dillon qualifies as a motor carrier.[6]

After the supplemental briefing was completed, the court granted Defendants' motion for summary judgment and denied Plaintiffs' motion on July 15, 2009. The district court held that: (1) the MCA exemption applied to Dillon because it is a joint employer with the Sunset companies, both of whom are subject to the exemption; and (2) Defendants' summary judgment evidence was sufficient to prove that the exemption applied to all Plaintiffs. The district court also dismissed Plaintiffs' claims with prejudice. Plaintiffs timely appealed.

## II. DISCUSSION

### A. Standard of Review

This court reviews a grant of summary judgment de novo, applying the same legal standards as the district court. *Allen v. McWane, Inc.*, 593 F.3d 449, 452 (5th Cir. 2010). Summary judgment is appropriate when the record discloses that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of demonstrating that there are no genuine issues of material fact in dispute. *Allen*, 593 F.3d at 452. We view the evidence in the light most favorable to the

___

[6] The district court also ordered additional briefing on the 2008 amendments to the definition of "motor carrier" in the MCA, 49 U.S.C. § 13102(14), but ultimately held that the definition is not material to this case.

nonmovant, drawing all reasonable inferences in the nonmovant's favor. *See id.* (citation omitted).

## B. The FLSA and the Motor Carrier Act Exemption

The FLSA requires employers to compensate employees engaged in commerce for all hours worked over forty each week at the rate of one and one-half times their regular rate. 29 U.S.C. § 207(a)(1). The statute also specifically exempts certain employers and/or employees from its overtime requirements. *Id.* § 213. Exemptions under the FLSA are construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption. *Barefoot v. Mid-America Dairymen, Inc.*, No. 93-1684, 1994 WL 57686, at *2 (5th Cir. Feb. 18, 1994) (per curiam) (citing *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 678 (1947)).

In this case, Defendants assert the MCA exemption, which states that the FLSA's overtime requirement "shall not apply . . . to . . . any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [of the MCA.]"[7] 29 U.S.C. § 213(b)(1). According to the Department of Labor (DOL) regulations enforcing the FLSA, the application of the MCA exemption to an employee "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). Accordingly:

> The power of the Secretary of Transportation to establish maximum hours and qualifications of service of employees, on which exemption depends, extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of

---

[7] Under section 31502, the Secretary "may prescribe requirements for . . . qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier[.]" 49 U.S.C. § 31502(b)(1).

passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act [codified at 49 U.S.C. § 31502] . . . , and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

*Id.* Further, we have stated that "[t]he Secretary . . . need only possess the power to regulate the employees at issue; it need not actually exercise that power for the [MCA] exemption to apply." *Barefoot*, 1994 WL 57686, at *2 (citing *Levinson*, 330 U.S. at 678).

## C. Application of the Motor Carrier Exemption

### 1.    *Employed By Carriers Subject to the Secretary's Power*

The first inquiry is whether Plaintiffs "are employed by carriers whose transportation of property by motor vehicle is subject to" the Secretary's jurisdiction.    29 C.F.R. § 782.2(a)(1).    To be subject to the Secretary of Transportation's jurisdiction pursuant to the MCA, a motor carrier[8] must be engaged in interstate commerce:

Although the MCA defines interstate commerce as commerce "between a place in a state and a place in another state," it has not been applied literally by the courts. In fact, we have defined it as the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.

*Siller v. L & F Distributors, Ltd.*, No. 96-40549, 1997 WL 114907, at *1 (5th Cir. 1997) (per curiam) (citing *Merchant's Fast Motor Lines, Inc. v. ICC*, 528 F.2d 1042, 1044 (5th Cir. 1976)).

---

[8] Motor carriers are defined as persons "providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14).

Plaintiffs do not dispute that Sunset Ennis and Sunset Logistics, two trucking companies, are motor carriers subject to the Secretary's power. Instead, they argue that Dillon, a staff leasing agency, is not a motor carrier within the meaning of the MCA. Defendants assert that because the Sunset companies are motor carriers and the Sunset companies are joint employers with Dillon, Dillon is also a motor carrier within the meaning of the MCA.

While Fifth Circuit precedent is limited on this issue, other courts have held that a staff leasing company who provides employees for a motor carrier and operates as a joint employer with the carrier meets the requirements of 29 C.F.R. § 782.2(a)(1). *See, e.g.*, *Moore v. Universal Coordinators, Inc.*, 423 F.2d 96, 99–100 (3d Cir. 1970) (holding that truck drivers were employees of both noncarrier truck driver leasing company and private motor carrier and therefore MCA exemption extended to leasing company). The *Moore* court analyzed the MCA and the FLSA, and determined that Congress intended to regulate employees of carriers in the interest of safety. *Id.* at 99. Therefore, the Secretary's power had to extend to leased drivers and to the leasing company that employed them. *Id.* at 99–100.

In a more recent case, the district court cited Congressional safety concerns as the rationale for extending the exemption:

> The [MCA] exemption, as explained in *Moore*, safeguards the Secretary['s] authority to regulate the qualifications and maximum hours of employees whose work affects the "safety of operation" of a motor carrier. . . . Refusing to extend the [MCA] exemption to the staffing agency defendants would therefore facilitate what Congress sought to prohibit—circumvention of the Secretary's regulatory authority.

*Tidd v. Adecco USA, Inc.*, No. 07-11214-GAO, 2010 WL 996769, at *2 (D. Mass. Mar. 16, 2010) (citing *Moore*, 423 F.2d at 98–99).

No. 09-10803

Applying *Moore* and *Tidd*, the evidence supports a finding that Dillon, as joint employer with Sunset Logistics and Sunset Ennis, is a carrier subject to the Secretary's jurisdiction. Dillon is a staff leasing company who provides drivers to Sunset Logistics and Sunset Ennis to fulfill interstate work orders from clients for compensation. Our review of the record reflects the following evidence: Dillon hires and trains the drivers and is responsible for their payroll, the Sunset companies are responsible for control of the drivers' day-to-day operations, and Dillon is reimbursed for wages and benefits paid to the drivers and receives a fee when the drivers are assigned. These facts are similar to *Tidd*, in which the staffing agency defendants were held as joint employers to FedEx, a motor carrier, and, therefore, subject to the Secretary's jurisdiction. *See Tidd*, 2010 WL 996769, at *2–3. Accordingly, we hold that the first requirement for jurisdiction under the MCA—i.e., that Plaintiffs work for carriers engaged in interstate commerce—is met. *See Barefoot*, 1994 WL 57686, at *2.

2.    *Engaged in Activities That Directly Affect Operational Safety of Motor Vehicles In Transport of Property In Interstate Commerce*

The second part of the MCA exemption inquiry is whether the Plaintiffs "engage in activities that directly affect the operational safety of motor vehicles in the transport of property in interstate commerce" as defined by the MCA. 29 C.F.R. § 782.2(a)(2). It is undisputed that Plaintiffs, as truck drivers subject to DOT requirements, are employed in positions that "affect the operational safety of motor vehicles." *See Barefoot v. Mid-America Dairymen, Inc.*, 826 F. Supp. 1046, 1050 (N.D. Tex. 1993), *aff'd*, 1994 WL 57686 (5th Cir. Feb. 18, 1994) (per curiam) ("Truck drivers are engaged in activities of a character affecting safety that subject them to the power of the Secretary . . . if the drivers are required to . . . complet[e] [DOT] logs recording the time spent driving, pass[] DOT written

10

and driving tests, complet[e] various DOT forms, and pass [] a DOT physical drug test.").[9]

We therefore determine whether Plaintiffs' activities directly affected motor vehicle safety "in the transport of property in interstate commerce." 29 C.F.R. § 782.2(a)(2). We have stated "'it is the character of the activities, rather than the proportion of the employee's time or activities'" that determines the Secretary's jurisdiction to regulate employees under the MCA (and therefore determines whether the MCA exemption of the FLSA applies). *Barefoot*, 1994 WL 57686, at *3 (citing *Morris v. McComb*, 332 U.S. 422, 431 (1947)).

Plaintiffs assert that the Secretary's jurisdiction only applies to transportation across state lines, and therefore that Defendants must demonstrate that each driver personally transported property by motor vehicle across state lines. But the Supreme Court held in *Morris* that the Interstate Commerce Commission (ICC), the predecessor to the DOT, had jurisdiction to regulate all of defendant carrier's drivers, even though two of the 42 drivers had not engaged in interstate trips during the relevant period, and that the drivers were not entitled to overtime under the FLSA. *Morris*, 332 U.S. at 434–36. In that case, the carrier's few interstate trips (4% of all trips during the relevant period) were distributed indiscriminately to all drivers. *Id.* at 433. The Supreme Court noted that, in practical terms, the safety concerns facing a carrier who sent *every* driver on an interstate trip would be the same if the carrier sent only *some or most* of its drivers on interstate trips. *See id.* at 434. Therefore, the ICC had the power to regulate all of defendant's drivers, and the *existence*—rather than the *exercise*—of that power was the test as to whether the employees were entitled to overtime pay under the FLSA. *Id.* at 434. *See also*

---

[9] Plaintiffs argue that being subject to DOT regulations is not *per se* sufficient to subject drivers to the Secretary's jurisdiction. However, they do not contest that as drivers, they engage in activities affecting safety operations of motor vehicles.

No. 09-10803

*Barefoot*, 1994 WL 57686, at *2 ("The Secretary . . . need only possess the power to regulate the employees at issue; it need not actually exercise that power for the [MCA] exemption to apply.") (citing *Levinson*, 330 U.S. at 678).

Additionally, the FLSA regulations promulgated by the DOL and the DOT's notice of interpretation have clarified that if drivers can be reasonably expected to perform interstate transport, the MCA exemption applies. The FLSA regulations state that generally, if the employee's job duties are "such that he is (or . . . is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities" of a driver, he comes within the MCA exemption "in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3).

> This general rule assumes that the activities involved in the continuing duties of the job in all such workweeks will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in transportation in interstate commerce. Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation."

*Id.* The DOT has also stated that "a driver will remain under the [Secretary's] jurisdiction . . . for as long as the driver is in a position to be called upon to drive in interstate commerce as part of the driver's regular duties." Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37,902, 37,903 (Dep't of Transp. July 23, 1981) (notice of interpretation) ("DOT Notice").[10]

---

[10] We note that "interpretations contained in formats such as opinion letters are 'entitled to respect', but only to the extent that those interpretations have the 'power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (distinguishing judicial deference to agency regulations under *Chevron* from deference to agency notices of interpretation and opinion letters) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

The summary judgment evidence supports the district court's finding that the drivers could have been called upon to drive in interstate commerce during their employment. In their deposition testimony, several drivers testified that they understood when they were hired by the Sunset companies that they might have to make out-of-state trips during their employment. Upon employment, the drivers were assigned routes via dispatcher, and the type and number of routes changed on a daily basis. In addition, the pick-up location, specific route, load, and destination were assigned indiscriminately based on various factors, and no drivers had a dedicated route. In other words, any driver could have been assigned to an interstate trip and, if they were, would be subject to DOT safety regulations affecting the operation of trucks. Therefore, the Secretary could retain jurisdiction over their activities, and they are exempt from receiving overtime pay.

Plaintiffs also contend that Defendants cannot meet their burden with respect to plaintiffs Henderson, Henley, Matthews, and Pervis because the record reflects no evidence that any of these plaintiffs ever traveled interstate or within Texas during their employment. Plaintiffs cite section 782.3(b) of the DOL regulations, applicable specifically to drivers, which states that a driver's work affects "'safety of operation' . . . whenever he drives a motor vehicle in interstate or foreign commerce," but the MCA exemption does not apply "if his job never involves transportation in interstate commerce within the meaning of the [MCA]." 29 C.F.R. § 782.3(b).

Plaintiffs' argument, however, ignores the general MCA exemption requirements of section 782.2(b)(3), which states that the exemption will be applicable "even in a workweek when the employee happens to perform no work directly affecting 'safety of operation,'" so long as the employee's *continuing duties* involve activities that affect motor vehicle safety in interstate transport.

13

29 C.F.R. § 782.2(b)(3).    Here, all the drivers, including Henderson, Henley, Matthews, and Pervis, were hired to drive trucks for the Sunset companies and their clients.    Their continuing duties were to accept assignments for transporting materials to, from, and within Texas and to expect termination if they refused an assignment.  The drivers are always required to perform these duties.  But there were occasionally weeks (for all the drivers) where they were not assigned to transport property in interstate commerce.  Plaintiffs cannot and do not claim that the drivers were required to perform other duties which would not affect the safety of motor vehicles in transport—for example, the drivers did not load or unload trucks.  At all times, Plaintiffs were employed to perform the continuing duties of a driver—i.e., "individuals whose driving duties are concerned with transportation some of which is in intrastate commerce and some of which is in interstate . . . commerce within the meaning of the [MCA]."  29 C.F.R. § 782.3(a).

Moreover, the DOT Notice states that if the Secretary claims jurisdiction over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs.  DOT Notice, 49 Fed. Reg. at 37903.  Defendants' summary judgment evidence demonstrates that the Sunset companies were engaged in the transport of property in interstate commerce during the relevant time period: in 2006, drivers for Sunset Logistics transported approximately 222,000 total loads of aggregate, of which approximately 5,980 were transported across state lines; in 2007, drivers for Sunset Ennis transported approximately 60,000 total loads of aggregate, of which approximately 2,000 loads were transported across state lines; and in 2008, drivers for Sunset Ennis hauled approximately 44,000 total loads of aggregate, of which approximately 1,000 were transported across state lines.  And as stated, the evidence further demonstrates that all the

No. 09-10803

drivers—including the four Plaintiffs who did not drive any interstate routes—could reasonably have been expected to drive in interstate commerce consistent with their job duties. Accordingly, we hold that the MCA exemption bars Plaintiffs' claims.[11]

## III. CONCLUSION

For all the foregoing reasons, we AFFIRM the judgment of the district court.[12]

AFFIRMED.

---

[11] Because we determine that Plaintiffs engaged in "[h]ighway transportation by motor vehicle from one State to another," we do not address whether Plaintiffs also met the MCA exemption when they transported materials from the Dallas rail terminals to points within Texas. *See* 29 C.F.R. § 782.7(b)(1) (defining interstate commerce as: (i) "[h]ighway transportation by motor vehicle from one State to another," *or* (ii) "[t]ransportation within a single [s]tate . . . [that] forms a part of a practical continuity of movement across [s]tate lines from the point of origin to the point of destination").

[12] Because we affirm the district court's grant of summary judgment and dismissal of all claims with prejudice, we do not address the district court's denial of Plaintiffs' motion for conditional certification and notice to putative class members under the FLSA collective action provision, 29 U.S.C. § 216(b).

15