# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 15-2710

———————————————

Richard Alexander; Bennie Collum; Don Davis; Duane Grimes; John Houpt; John Howland; Jason Phillips; Dwayne Pritchard; Randy Schroeder; Kylan Utley; Robert McNeil,

*Plaintiffs - Appellants*,

v.

Tutle and Tutle Trucking, Inc.; Tommy Paul Tutle, Individually and as Officer and Director of Tutle and Tutle Trucking, Inc.; Gary Tutle, Individually and as Officer and Director of Tutle and Tutle Trucking, Inc.; Schlumberger Limited, (Schlumberger NV); Schlumberger Technology Corporation; Schlumberger Technologies Inc.,

*Defendants - Appellees*.

————————————

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

————————————

Submitted: April 13, 2016
Filed: August 22, 2016

————————————

Before COLLOTON and GRUENDER, Circuit Judges, and BOUGH,[1] District Judge.

————————————

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri, sitting by designation.

COLLOTON, Circuit Judge.

Richard Alexander and ten other plaintiffs brought suit against Tutle and Tutle Trucking, Inc. and its directors and officers (collectively, "Tutle"), and three entities with the Schlumberger name that owned a fleet of trucks operated by Tutle (collectively, "Schlumberger"). Tutle employed the plaintiffs as truck drivers, and the drivers contend that Tutle and Schlumberger failed to pay them overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-211(a). The district court[2] determined that no overtime wages were due, because an exemption under the federal Motor Carrier Act applied to the drivers. The court thus granted summary judgment for the defendants, and the drivers appeal. We affirm.

I.

Tutle provides trucking services for hydraulic fracturing companies. During the relevant period, Tutle owned and operated its own fleet of trucks. Schlumberger supplies a range of services to customers in the oil and gas industry. In March 2011, Tutle entered into an agreement with Schlumberger to operate a fleet of Schlumberger trucks using Tutle employees as drivers.

Tutle employed Alexander and the other plaintiffs as truck drivers based in Arkansas. The drivers understood that Tutle could assign them to drive routes outside of Arkansas as part of their employment. Each plaintiff driver was designated to drive Schlumberger trucks at some point in 2012 or 2013. The drivers contend that when Tutle recruited them to the Schlumberger assignment, the company told each

[2]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

driver that he would drive Schlumberger trucks only within Arkansas. The drivers assert that their primary responsibility when driving the Schlumberger trucks was to haul within Arkansas loads of "frac sand," a specialized type of sand that is added to fracking fluids that are injected into wells during hydraulic fracturing.

In practice, however, each driver traveled outside Arkansas in a Schlumberger truck at least once, and up to five times, while designated as a Schlumberger driver. These trips involved vehicle inspections or equipment relocation. On some occasions, the drivers hauled sand into Arkansas when returning from an out-of-state trip in a Schlumberger truck. Five drivers operated Schlumberger trucks in Oklahoma and Texas for approximately one month in July and August 2013. These month-long trips out of Arkansas were to haul frac sand to wells in Oklahoma and Texas.

While designated as Schlumberger drivers, several of the drivers also operated Tutle trucks when Tutle required it. Although the drivers were assigned primarily to the Schlumberger trucks, Tutle asserts that it retained authority to require the drivers to drive a Tutle truck or to drive out of state as needed. Even when driving Schlumberger trucks, the drivers continued to receive trip instructions from Tutle dispatchers.

The drivers contend that as operators of Schlumberger trucks, they were subject to a different set of policies than other drivers whom Tutle employed. Drivers assigned to Schlumberger trucks were paid a flat daily or weekly rate, while drivers assigned to Tutle trucks received a commission and "demerge pay" for waiting to load or unload cargo. The drivers also assert that they worked different hours than other Tutle drivers. The drivers complied with a safe driving program and used an E-Journey software system to log their trips when driving Schlumberger trucks.

This dispute concerns whether the drivers were entitled to overtime compensation. Both federal law and Arkansas state law require employers to pay

employees overtime compensation for hours worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1); Ark. Code Ann. § 11-4-211(a). One exception to this general rule is the Motor Carrier Act exemption, which excepts from overtime requirements "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1); *see also* Ark. Code Ann. § 11-4-211(d).

The drivers sued Tutle and Schlumberger, alleging that the companies had violated the FLSA and the AMWA by failing to pay overtime compensation. The drivers also sought punitive damages based on the alleged violations of state law, pursuant to the Arkansas Civil Justice Reform Act. Ark. Code Ann. § 16-55-206.

On competing motions for summary judgment, the district court concluded that the Motor Carrier Act exemption applied to the drivers, because there was a reasonable expectation that the drivers would travel in interstate commerce, and such activity was not *de minimis*. The court therefore granted summary judgment for Tutle and Schlumberger. We review the district court's ruling *de novo*, viewing the record in the light most favorable to the drivers. *Thomas v. Heartland Emp't Servs. LLC*, 797 F.3d 527, 529 (8th Cir. 2015). Summary judgment is appropriate if there is no genuine dispute of material fact, and Tutle and Schlumberger are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

II.

In the district court, the drivers sought overtime compensation from January 2012 through August 2013, the entire time that they were designated to drive Schlumberger trucks. On appeal, the drivers seek compensation only for the period between January 2012 and mid-July 2013. The drivers' refined position on appeal, however, cannot artificially limit the evidence that is relevant to determining the

nature of their work and their eligibility for overtime compensation. We consider the entire record developed in the district court.

Application of the Motor Carrier Act exemption depends both on the nature of the employer and the type of work done by the employee. 29 C.F.R. § 782.2(a). First, the exemption applies only to workers employed by a carrier who is subject to the jurisdiction of the Secretary of Transportation. *Id.*; *see* 49 U.S.C. § 31502(b) (stating that the Secretary may prescribe requirements for the employees of motor carriers and motor private carriers). The drivers do not dispute that Tutle is a motor private carrier and thus subject to the jurisdiction of the Secretary of Transportation. *See* 49 U.S.C. § 13102(15). Although Schlumberger did not employ the drivers directly, the drivers argued in the district court that Schlumberger was liable as a joint employer with Tutle. On appeal, the drivers contend the district court failed to determine whether Schlumberger was also entitled to the Motor Carrier Act exemption. We have considered the point, and assuming for the sake of analysis that Schlumberger is a joint employer of the drivers, Schlumberger also would be a carrier subject to the jurisdiction of the Secretary by virtue of its joint employer status. *See Songer v. Dillon Res., Inc.*, 618 F.3d 467, 472-73 (5th Cir. 2010).

Second, the employees must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce." 29 C.F.R. § 782.2(a). As a general rule, an employee fits into this category if the employee is "called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities" in transportation in interstate commerce. 29 C.F.R. § 782.2(b)(3). Citing a notice of interpretation from the Department of Transportation, the parties agree that the exemption applies if there is a "reasonable expectation" that the employee will be directed to perform interstate driving. Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37,902-02, 37,903 (Dep't of Transp. July 23, 1981) ("DOT Notice"); *see Songer*, 618 F.3d at

474. The exemption does not apply, however, where the continuing duties of an employee's job have no substantial direct effect on the safety of transportation in interstate commerce or where "such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis." 29 C.F.R. § 782.2(b)(3).

As drivers, the plaintiffs performed job duties that affected "the safety of operation" of motor vehicles. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 677-78 (1947); 29 C.F.R. § 782.3(b). The contested question on appeal is whether the drivers' activities had a sufficient connection to interstate commerce. *See* 29 C.F.R. § 782.2(a). The drivers contend that because they were designated to drive Schlumberger trucks in Arkansas and drove primarily within that State, they were not called upon in the ordinary course of their duties to make interstate trips. They rely on the facts that no single plaintiff drove outside of Arkansas more than five times between January 2012 and July 2013, and that the drivers, as a group, drove in interstate commerce on fewer than 1% of the days that they were designated as Schlumberger drivers.

"[I]t is 'the character of the activities rather than the proportion of either the employee's time or of his activities'" that determines the Secretary's jurisdiction to regulate employees. *Morris v. McComb*, 332 U.S. 422, 431 (1947) (quoting *Levinson*, 330 U.S. at 674-75); *see also* 29 C.F.R. § 782.2(b)(2). Tutle is an interstate trucking company. Even when the plaintiffs were assigned to drive Schlumberger trucks, they remained Tutle employees and continued to receive their trip instructions from Tutle dispatchers. Tutle retained the ability to reassign the drivers to operate Tutle trucks and did assign eight of the employees to drive Tutle trucks when the company needed drivers to move equipment or when there was little work available on the Schlumberger detail. That no plaintiff drove an interstate route in a Tutle truck during the relevant time period is not determinative, for drivers who were assigned to Tutle trucks often drove interstate routes. The Motor Carrier Act exemption applies to a driver who performs no interstate driving if the driver is "subject to

be[ing] assigned an interstate trip" and there is a reasonable expectation of such an assignment. *Starrett v. Bruce*, 391 F.2d 320, 323-24 (10th Cir. 1968); *see* DOT Notice, 46 Fed. Reg. at 37,902.

Tutle also sent the drivers on multiple interstate trips when they drove Schlumberger trucks. From January 2012 to July 2013, nine of the eleven plaintiff drivers drove at least one interstate route in a Schlumberger truck. Five of those nine drivers made multiple interstate trips during that period. In July and August 2013, five Schlumberger drivers hauled sand in Oklahoma and Texas for approximately one month. Over the time that the drivers operated Schlumberger trucks, every plaintiff driver traveled outside of Arkansas in a Schlumberger truck, and nine of the drivers made more than one interstate trip. The Motor Carrier Act exemption applies even where interstate transportation makes up a small percentage of an employee's duties. *See Morris*, 332 U.S. at 433-34 (applying the exemption where interstate trips constituted 4% of employee drivers' duties); DOT Notice, 46 Fed. Reg. at 37,902. When viewed collectively, this evidence establishes that the character of the drivers' job duties was such that they were called upon "either regularly or from time to time" to drive in interstate commerce. 29 C.F.R. § 782.2(b)(3). There was a reasonable expectation of interstate travel.

The drivers make several arguments to rebut the conclusion that they were expected to drive interstate routes. They rely on their testimony that Tutle managers told them that they would stay in Arkansas when recruiting them to the Schlumberger assignment. The drivers do not argue that their expectations are dispositive but assert that the managers' statements are relevant to discerning whether the drivers had a reasonable expectation of driving in interstate commerce. Even accepting that the managers made the asserted recruiting pitch, those statements do not counter the weight of undisputed evidence described above. The drivers were Tutle employees, Tutle drivers covered interstate routes, Tutle directed the drivers when driving both Tutle and Schlumberger trucks, the drivers drove Tutle trucks when needed even

while on the Schlumberger detail, and the drivers drove interstate trips in Schlumberger trucks.

Nor does the drivers' claim that they drove out of Arkansas on only 0.45% of days during which they were designated Schlumberger drivers preclude summary judgment. The drivers' statistic is not easily compared to statistics in other cases, because the drivers measure the number of days in which they drove out of Arkansas, rather than the proportion of trips that were interstate. *Cf. Morris*, 332 U.S. at 432-33; *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 874 (3d Cir. 2015); *Songer*, 618 F.3d at 476; *Kimball v. Goodyear Tire & Rubber Co.*, 504 F. Supp. 544, 547-48 (E.D. Tex. 1980). The drivers also do not disclose whether there were days on which no trips were made or days where multiple trips were made. Without additional information, we cannot determine whether the 0.45% number describes accurately the proportion of the drivers' duties that affected interstate commerce. In any event, even a small proportion of interstate travel does not eliminate the Secretary's jurisdiction, because it is the character of the drivers' activities that matters.

The drivers also argue that their interstate trips were for "extraordinary purposes, outside their normal, sand-hauling duties." But while many interstate trips involved vehicle inspections or equipment relocation, those tasks were within the scope of their employment with Tutle. On multiple occasions, moreover, the drivers returned to Arkansas with a load of sand.

The drivers next argue that any interstate driving that they performed was *de minimis*. While the regulations recognize a *de minimis* exception to the Motor Carrier Act exemption, *see* 29 C.F.R. § 782.2(b)(3), drivers should "seldom, if ever" fall within that exception. *Resch*, 785 F.3d at 875 (quoting *Friedrich v. U.S. Comput. Servs.*, 974 F.2d 409, 417 n.10 (3d Cir. 1992)). "The activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial. Such activities directly affect the safety of motor vehicle operations." *Crooker v. Sexton*

*Motors, Inc.*, 469 F.2d 206, 210 (1st Cir. 1972). As the Supreme Court explained, "the driver's work more obviously and dramatically affects the safety of operation of the carrier during every moment that he is driving than does the work of the loader who loaded the freight which the driver is transporting." *Levinson*, 330 U.S. at 678. The drivers each drove interstate as a requirement of their employment with Tutle, and the majority of drivers made multiple interstate trips. The effect of these trips on the safety of the operation of motor vehicles in interstate commerce was not trivial, casual, or insignificant, 29 C.F.R. § 782.2(b)(3), so the *de minimis* exception does not apply.

*     *     *

Because the Motor Carrier Act exemption applies to the drivers, they are not entitled to overtime compensation. The judgment of the district court is affirmed.

_____