HIGGINSON, Circuit Judge:
Plaintiffs-Appellants alleged that they worked more than forty hours a week, and that their employer, Defendant-Appellee Coil Tubing Services, L.L.C. (“CTS”), wrongfully denied them overtime pay in violation of the Fair Labor Standards Act (“FLSA”). The district court held, among other things, that the Motor Carrier Act (“MCA”) exempted certain CTS employees from the overtime-pay requirements of the FLSA based, in part, on the percentage of safety-affecting interstate activities these employees engaged in company-wide. Undertaking a limited interlocutory review, we AFFIRM.
FACTS AND PROCEEDINGS
CTS services oil wells. From 2005 to 2008, the company divided itself into six geographic “districts.” The districts operated under a single U.S. Department of Transportation (“DOT”) number, and were not legal entities distinct from CTS. The districts sometimes borrowed personnel and equipment from each other. They also sometimes solicited and accepted projects outside their respective geographic boundaries.
Plaintiffs worked in four of the districts: Alice, Texas; Angleton, Texas; Bridgeport, Texas; and Broussard, Louisiana. Their positions included: Equipment Operator (“EO”), Service Technician I (“STI”), Service Technician II (“ST-II”), Service Supervisor Trainee (“SST”), Service Supervisor (“SS”), Service Coordinator (“SC”), and Field Engineer I (“FE-I”).
Plaintiffs’ duties varied by position. SCs coordinated projects. FE-Is recorded the pressure of coil tubing units at well sites. EOs, ST-Is, ST-IIs, SSTs, and SSs helped transport materials to project sites.
Plaintiffs initiated this suit for overtime pay in November 2008. “To efficiently manage [the] case,” the district court ordered the parties to conduct discovery on a cross-section of fourteen Plaintiffs, known as the “Bellwether group.” On completion of discovery, the parties filed cross-motions for summary judgment on whether exemptions to the FLSA, and, in particular, an MCA exemption allowing certain employers not to pay overtime to employees engaged in safety-affecting interstate activities, applied to Plaintiffs.
*282 The district court initially denied, in part, summary judgment for CTS based, in part, on a district-by-district analysis of the employees’ interstate activities. The district court explained: that EOs, ST-Is, ST-IIs, SSTs, and SSs, but not FE-Is and SCs,[1] had similar-enough job duties to be grouped together as “Field Service Employees,” or “FSEs”; that FSEs who worked on land-based, but not offshore, wells engaged in activities affecting motor vehicle safety; and that, measuring interstate activities by district, only land-based FSEs in certain districts had a reasonable expectation of engaging in sufficient interstate activities.
The parties filed motions for reconsideration. Observing that “[njeither party had argued for a district-by-district analysis,” the district court granted CTS’ motion, and vacated its initial order.
The district court then granted, in part, summary judgment for CTS, using a company-wide analysis to find that the MCA exemption applied to many of the Plaintiffs. In a sixty-three page opinion issued January 11, 2012, the district court used the same individualized analysis to establish the class of FSEs, and to determine that only FSEs who worked on land-based wells engaged in activities affecting motor vehicle safety. The district court then reasoned that a company-wide analysis of these employees’ interstate activities was appropriate because “[tjhere is insufficient evidence or legal authority ... to treat the districts separately.” Measuring the interstate activities of land-based FSEs on a company-wide basis, the district court found: that 7 percent of projects required these employees to drive across state lines; that such trips were assigned indiscriminately; and that, therefore, land-based FSEs had a “reasonable expectation” that they “could be assigned to drive interstate.” The district court extended its rulings to all Plaintiffs, and not just those in the Bellwether group.
The district court granted Plaintiffs’ request for permission to file an interlocutory appeal under 28 U.S.C. § 1292(b), explaining that its rulings, “particularly those involving application of the [MCA exemption], involve controlling questions of law as to which there is substantial ground for difference of option,” and that “an immediate appeal from those rulings is likely to materially advance the ultimate termination of this litigation.” This court then granted Appellants’ motion for leave to appeal.
STANDARD OF REVIEW
“Although we ordinarily review a district court’s summary judgment ruling de novo, our appellate jurisdiction under [28 U.S.C.] § 1292(b) extends only to controlling questions of law, thus, we review only the issue of law certified for appeal.” Tanks v. Lockheed Martin Corp., 417 F.3d 456, 461 (5th Cir.2005). The district court certified for interlocutory appeal the rulings in its January 11, 2012 order, “particularly those involving application of the [MCA exemption].” We therefore limit our review to these rulings, particularly whether the MCA exemption applies.
THE MCA EXEMPTION
Section 207 of the FLSA requires an employer to pay overtime compensation to any employee working more than forty hours in a workweek.[2] See 29 U.S.C. *283 § 207(a)(1); Singer v. City of Waco, 324 F.3d 813, 818 (5th Cir.2003). “Exemptions under the FLSA are construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption.” Songer v. Dillon Res., Inc., 618 F.3d 467, 471 (5th Cir.2010).
At issue on appeal is the MCA exemption, “which states that the FLSA’s overtime requirement ‘shall not apply ... to ... any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49' of the MCA.’ ” Id. (alterations in original) (quoting 29 U.S.C. § 213(b)(1)). Section 31502, in turn, provides that the DOT “may prescribe requirements for ... qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation.” 49 U.S.C. § 31502(b)(2). The DOT may establish these requirements for employees who
(1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the [MCA] ... and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA],
29 C.F.R. § 782.2(a); see Songer, 618 F.3d at 472. “For the motor carrier exemption to apply ... [the employees] must meet both of these requirements.” Barefoot v. Mid-Am. Dairymen, Inc., No. 93-1684, 1994 WL 57686, at *2 (5th Cir. Feb. 18, 1994) (per curiam) (unpublished).
To satisfy the first requirement— whether the employer is “subject to [the DOT’s] jurisdiction,” 29 C.F.R. § 782.2(a) — an employer “must be engaged in interstate commerce.” Songer, 618 F.3d at 472. The MCA defines interstate commerce as commerce “between a place in ... a State and a place in another State.” 49 U.S.C. § 13501(1)(A). However, this definition “has not been applied literally by the courts. In fact, we have defined it as the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce.” Songer, 618 F.3d at 472 (internal quotation marks omitted).
To satisfy the second requirement — whether the employees “engage in activities of a character directly affecting the safety of operation of motor vehicles ... in interstate ... commerce,” 29 C.F.R. § 782.2(a) — “neither the name given to his position nor that given to the work that he does is controlling.” 29 C.F.R. § 782.2(b)(2) (citing Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 707, 67 S.Ct. 954, 91 L.Ed. 1184 (1947)). Rather, “what is controlling is the character of the activities involved in the performance of [the employee’s] job.” 29 C.F.R. § 782.2(b)(2); see Levinson v. Spector Motor Serv., 330 U.S. 649, 674-75, 67 S.Ct. 931, 91 L.Ed. 1158 (1947) (observing that “[i]t is the character of the activities rather than the proportion of either the employ *284 ee’s time or of his activities” that controls). As a “general rule,”
if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers, driver’s helpers, loaders, or mechanics employed by a common carrier and engaged in safety-affecting occupations, that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities ... he comes within the exemption in all workweeks when he is employed at such job.... Where this is the case, the rule applies regardless of the proportion of the employee’s time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting “safety of operation.”
29 C.F.R. § 782.2(b)(3); see Songer, 618 F.3d at 474. “On the other hand, where the continuing duties of the employee’s job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to [the employee] in any workweek so long as there is no change in his duties.” 29 C.F.R. § 782.2(b)(3) (citing Pyramid, 330 U.S. at 707-08, 67 S.Ct. 954).
To measure whether employees are “likely to be ... called upon in the ordinary course of [their] work to perform ... safety-affecting activities” that are interstate in nature, 29 C.F.R. § 782.2(b)(3), we look to whether the employees “could reasonably have been expected to [engage] in interstate commerce consistent with their job duties.” Songer, 618 F.3d at 476 (finding that a reasonable expectation arose when about 2.75 percent of “loads were transported across state lines”); see Morris v. McComb, 332 U.S. 422, 433-34, 68 S.Ct. 131, 92 L.Ed. 44 (1947) (applying the MCA exemption to drivers who spent about 4 percent of their time transporting goods in interstate commerce); Starrett v. Bruce, 391 F.2d 320, 323-24 (10th Cir.1968) (applying the MCA exemption to a driver, even though the driver’s employer derived no income from interstate transport, because the employer solicited interstate business and would have assigned the driver to interstate trips if the employer had obtained such business).
The parties do not dispute that CTS satisfies the first requirement&emdash;being “subject to [the DOT’s] jurisdiction,” 29 C.F.R. § 782.2(a)&emdash;because it is a motor carrier that engages in interstate com- merce. Rather, the parties dispute the second requirement: whether the FSEs engaged in activities that affected “the safety of operations of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce.” 29 C.F.R. § 782.2(a). Within the framework of this second re- quirement, the parties do not contest that an individualized analysis is appropriate to determine whether Appellants have simi- lar-enough duties to belong to the class of employees that engages in safety-affecting activities. The parties only contest wheth- er, in measuring the interstate activities of this class of employees, an “employee-by- employee,” “district-by-district,” or “company-wide” analysis is appropriate. We hold that a
company-wide analysis is appropriate in this case because this court’s precedent effectively forecloses an employee-by-employee analysis, and the facts of this case, and arguments advanced by the parties, do not support a district- by-district analysis. This court’s Songer decision
declined to adopt an employee-by-employee analysis. adopt an employee-by-employee analysis. *285 In Songer, truck drivers sought overtime under the FLSA. 618 F.3d at 468. The drivers argued that “[s]imply being an interstate driver for a commercial carrier is not enough ... a driver must be personally engaged in interstate transportation to be exempt.” A unanimous panel declined to adopt this argument, observing that the “application of the MCA exemption to an employee ‘depends ... on the class of work involved in the employee’s job.’” Songer, 618 F.3d at 472 (emphasis added) (quoting 29 C.F.R. § 782.2(a)). The panel first observed that “Plaintiffs, as truck drivers subject to DOT requirements, are employed in positions that affect the operational safety of motor vehicles.” Songer, 618 F.3d at 473 (internal quotation marks omitted). Then, evaluating these drivers as a class, the panel found: that about 2.75 percent of the drivers’ trips were interstate; that the drivers’ employer indiscriminately assigned such trips; and that, therefore, the drivers “could reasonably have been expected to drive in interstate commerce consistent with their job duties.” See id. at 475-76. This is Son-ger ’s binding analysis:
Plaintiffs assert that the Secretary’s jurisdiction only applies to transportation across state lines, and therefore that Defendants must demonstrate that each driver personally transported property by motor vehicle across state lines. But the Supreme Court held in Morris that the Interstate Commerce Commission (ICC), the predecessor to the DOT, had jurisdiction to regulate all of defendant carrier’s drivers, even though two of the 42 drivers had not engaged in interstate trips during the relevant period, and that the drivers were not entitled to overtime under the FLSA. Morris, 332 U.S. at 434-36, 68 S.Ct. 131. In that case, the carrier’s few interstate trips (4% of all trips during the relevant period) were distributed indiscriminately to all drivers. Id. at 433, 68 S.Ct. 131. The Supreme Court noted that, in practical terms, the safety concerns facing a carrier who sent every driver on an interstate trip would be the same if the carrier sent only some or most of its drivers on interstate trips. See id. at 434, 68 S.Ct. 131.
Id. at 474.
The district court in this case explicitly and closely adhered to our Songer decision’s reasonable expectation analysis. The district court created a chart that listed each member of the Bellwether group, and included the member’s title, district, and start and end dates. Then the district court looked to each member’s job duties to find that, notwithstanding their different positions, members working as EOs, ST-Is, ST-IIs, SSTs, and SSs had sufficiently similar duties to belong to a class of employees known as FSEs. Tellingly, the district court delimited this class by excluding FE-Is and SCs because there was “insufficient evidence about whether the FE-Is or the SCs engaged in safety-affecting transportation duties and whether there was a reasonable expectation that their work would affect the safety of interstate transportation.” The district court further delimited this class by excluding FSEs who worked on offshore projects because “the factual record is conflicting and there remain open legal issues” as to whether offshore FSEs engaged in safety-affecting transportation activities affecting interstate commerce.[3] The district court, after this extensive individualized methodology, then found: that 7 percent of projects company-wide required this class of employees to cross *286 state lines; that CTS assigned such interstate trips indiscriminately; and that, therefore, these employees had a “reasonable expectation” that they “could be assigned to drive interstate.”[4] Given that this analysis adheres to the reasonable expectation approach of Songer, we cannot say that, after using an individualized analysis to form the class of employees known as land-based FSEs, the district court erred by not repeating the individualized analysis to measure the interstate activity of each member of the class.
Relevant other Fifth Circuit and Supreme Court decisions are consistent with Songer. For example, in Barefoot, a unanimous panel found that twenty-six truck drivers engaged in interstate commerce even though “the drivers conceded that, among the twenty-six of them,” only about “twenty trips were made across state lines.” See 1994 WL 57686, at *3. Likewise, in Morris, the Supreme Court found that forty-three drivers, who, as a group, devoted “about 4% of their time and effort ... to services in interstate commerce,” engaged in interstate commerce even though two of the drivers did not take interstate trips. 332 U.S. at 432-34, 68 5.Ct. 131. By contrast, the circuit court cases cited by Appellants in support of an employee-by-employee analysis are distinguishable.[5]
Appellants argue that, by using “singular nouns and pronouns,” the relevant statutes and regulations, including 29 U.S.C. §§ 207(a), 213(b) and 29 C.F.R. § 782.2, envision an employee-by-employee analysis. Read in context, however, the use of singular terms suggests only that a district court should use an individual analysis to determine if an employee belongs to a particular “class.” See, e.g., 29 C.F.R. § 782.2 (observing the exemption depends on “the class of work involved in the employee’s job” and “extends to those classes of employees” who engage in safety-affective activities) (emphases added). As discussed above, by finding that certain employees had similar-enough duties to belong to a class of employees known as FSEs, and then by limiting this class, the district court used such an analysis.[6]
*287 Because Songer forecloses an employee-by-employee analysis, and because Appellants do not provide a persuasive reason to depart from Songer, the question narrows to whether the district should have used a district-by-district or company-wide analysis to measure the interstate activities of land-based FSEs.
Given the arguments advanced by the parties, and the facts of the case, a company-wide analysis was appropriate. The FLSA provides that overtime-pay requirements and exemptions apply only to an “employer.” See 29 U.S.C. § 207(a)(1). The district court found that CTS “was Plaintiffs’ only ‘employer’ during the relevant time periods; Plaintiffs were not employed by the various districts.” Appellants did not argue in district court that the districts were their employers, and they do not challenge on appeal the finding that CTS “was [their] only ‘employer.’ ” Appellants therefore have waived any argument to the contrary.[7] See F.D.I.C. v. Mijalis, 15 F.3d 1314, 1326-27 (5th Cir.1994).
By waiving this textual argument, Appellants’ opposition to a company-wide analysis reduces to their contention that “the percentages of interstate travel for [some districts] tell courts nothing about the reasonable expectation of a worker dispatched from [other districts].” However, Songer looks at the reasonable expectations of the employees as a class, even if, in doing so, the effect is to apply the MCA exemption to employees who rarely, or never, engage in interstate commerce. See 618 F.3d at 472-76. Songer does not instruct us to subdivide a class of employees by geography, and the facts of this case do not support such an artificial division. For example, the districts: operated under a single DOT number; were not independent legal entities; borrowed personnel and equipment from each other; and solicited and accepted projects outside their geographic areas. Accordingly, as the district court found, “[t]here is insufficient evidence or legal authority ... to treat the districts separately instead of conducting the MCA Exemption analysis based on CTS as a single ‘employer.’”[8]
*288 In sum, the district court did not err in using a company-wide analysis because this court’s precedent effectively precludes an employee-by-employee analysis, and because neither the parties’ arguments, nor the relevant facts, support a district-by-district analysis.[9]
CONCLUSION
Accordingly, we AFFIRM the district court’s application of the MCA exemption.

. The district court denied the parties’ summary judgment motions relating to the FE-Is and SCs on the basis that there was a genuine issue of fact as to whether the MCA exemp-lion applied to employees holding these positions.

. Section 207(a)(1) provides in full:
*283 Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

. We note also the district court's fact-intensive assessment even of those offshore employees as to whether they were, like Plaintiff Broussard, prohibited from driving.

. Echoing Songer, the district court emphasized that "[tjhese employees have similar job duties, were or could have been called upon to drive in interstate commerce during their employment, and receive project assignments that changed often. Any driver could have been assigned to an interstate project at any time,” and concluded that "the evidence establishes that, objectively, there was a reasonable expectation that any CTS Field Service Employee could be assigned to drive interstate.”

. For example, in Goldberg v. Faber Indus., Inc., the Seventh Circuit declined to apply the MCA exemption to drivers based, in part, on the fact that the drivers were assigned to “designated” intrastate routes. 291 F.2d 232, 234 (7th Cir.1961). By contrast, in this case, interstate routes were assigned indiscriminately. Moreover, the Seventh Circuit in Goldberg positively applied Morris, which, as noted already, involved a group that had two non-interstate drivers. See 291 F.2d at 235.

. Appellants also maintain that CTS is judicially estopped from arguing for a company-wide analysis because CTS argued for an employee-by-employee analysis in Yaklin v. W-H Energy Servs., Inc., No. C-07-422, 2008 WL 1989795, át *1 (S.D.Tex. May 2, 2008) (unpublished). To the extent that this estoppel argument is within the scope of our limited interlocutory review, see Tanks, 417 F.3d at 461, it is unpersuasive. Although "judicial estoppel is not governed by inflexible prerequisites,” its application generally requires, among other things, that “a court accepted the prior position.” Love v. Tyson Foods, Inc., 677 F.3d 258, 261 (5th Cir.2012) (internal quotation marks omitted). Even if CTS did argue for an employee-by-employee analysis in Yaklin, Appellants do not argue, and the Yaklin opinion does not support, that the Yak-lin court accepted CTS' argument. See 2008 WL 1989795, at *3.

. The FLSA defines an "employer” to "include[] any person" — that is, "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," 29 U.S.C. § 203(a).— "acting directly or indirectly in the interest of an employer in relation to an employee.” 29 U.S.C. § 203(d). Because we find that waiver applies, we decline to address whether the districts were "employers” under this definition.

. With the highest respect, we are unconvinced by the dissenting opinion’s insistence that precedent “prohibits” courts from determining a particular employee’s reasonable expectation by reference to a class of similarly situated employees. Post, at 296. Indeed, the dissent itself uses this "prohibited” mode of analysis by classifying employees by districts. In what it deems "The Proper Analysis,” the dissent does not "make a determination vel non for each plaintiff-employee,” but instead divides up the plaintiffs by district: “the vast majority of jobs handled by the Alice, Angleton, Bridgeport, and Broussard districts were purely intrastate jobs.” Post, at 305, 305. As evidence of the reasonable expectation of a particular employee, the dissent looks to the percentage of each district’s jobs that were interstate: "in Alice and Bridgeport, less than one percent of the jobs handled by those districts during the period recorded were interstate.” Post, at 305. The dissent concludes its district-by-district analysis: “Based on this evidence, a reasonable factfin-der could determine that the likelihood of these field service employees in the Alice, Angleton, Bridgeport, and Broussard districts driving interstate is so minimal and remote, they cannot be 'reasonably expected' to be 'called upon in the ordinary course of [their] work to [drive interstate].’ ” Post, at 306 (quoting Songer, 618 F.3d at 474). The dissent may disagree with our choice of classification, preferring a district-by-district class to company-wide class, but it is still utilizing classifications in its analysis.
*288 The dissent further does not convincingly explain how its proposed individualized methodology coincides with Songer or Morris. As we explained, Morris found jurisdiction to regulate "all of defendant carrier’s drivers, even though two of the 42 drivers had not engaged in interstate trips.” Songer, 618 F.3d 467. If Morris applied an "individualized” assessment of the two employees that had not engaged in interstate trips, it could not have found that these employees had a reasonable expectation of engaging in interstate trips: they had not done so before. It is only by reference to other employees' experience that Monis’s conclusion makes sense. The dissent revealingly explains that Songer "made the common sense observation that, because of company policies that were factually common to all employees {i.e., the indiscriminate assignment of interstate trips), each and every employee, all of whom had the same likelihood of driving interstate, was reasonably likely to drive interstate.” Post, at 302. What the dissent frames as a "common sense observation” we call a class-based analysis; there is a minimal semantic gap between our views. Moreover, the district court made this exact "common sense observation” when it found that "[t]hese employees have similar job duties, were or could have been called upon to drive in interstate commerce during their employment, and receive project assignments that changed often. Any driver could have been assigned to an interstate project at any time.” Accordingly, both of our opinions use classifications to determine whether a particular employee has a reasonable expectation. We simply part ways over the relevant class of comparison, and the factual conclusion reached by the district court, "that the evidence establishes that, objectively, there was a reasonable expectation that any CTS Field Service Employee could be assigned to drive interstate.”

. CTS also argues that the district court erred by extending its January 11, 2012 rulings to all Plaintiffs, and not just the Bellwether group. Even if this argument is within the scope of our limited interlocutory review, see Tanks, 417 F.3d at 461, it is unpersuasive. Appellants rely on an Eleventh Circuit case, Hogan v. Allstate Insurance Co., for the proposition that Federal Rule of Civil Procedure 56(c) requires that "a minimum 10-day notice ... must be explicitly given to all plaintiffs,” and not just "test plaintiffs.” 361 F.3d 621, 628 (11th Cir.2004) (per curiam). However, Rule 56 was amended in 2010-subsequent to the Hogan decision, but before the district court’s January 11, 2012 rulings-to remove the referenced ten-day notice requirement. See Atkins v. Salazar, 677 F.3d 667, 678 n. 15 (5th Cir.2011) (per curiam). Further, CTS requested that the district court’s rulings apply to all plaintiffs in a March 2011 filing, and then did so again in its motion for reconsideration. As a result, attorneys for the non-Bellwether Plaintiffs, who also represented the Bellwether Plaintiffs, had "a full opportunity to argue against” the application of the district court's rulings to all Plaintiffs. See Atkins, 677 F.3d at 681.