# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-20635

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2018

Lyle W. Cayce
Clerk

JUAN AMAYA,

      Plaintiff - Appellant

v.

NOYPI MOVERS, L.L.C.; PIONEER CONTRACT SERVICES,
INCORPORATED; SUSAN SUSUSCO; RAUL SUSUSCO; BLUGGI, L.L.C.,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-928

Before DENNIS, CLEMENT, and ENGELHARDT, Circuit Judges.

PER CURIAM:[*]

Juan Amaya filed a collective action suit against Pioneer Contract Services, Inc., NOYPI Movers, L.L.C., BLUGGI, L.L.C.,[1] and two individual executives of NOYPI (collectively, "the defendants"). Amaya seeks unpaid overtime wages owed under the Fair Labor Standards Act, 29 U.S.C. § 216(b).

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] NOYPI was the prior name for what is now BLUGGI, L.L.C.

No. 17-20635

Amaya appeals the district court's grant of summary judgment in favor of the defendants. For the reasons set forth, we reverse.

I.

Pioneer Contract Services is a commercial relocation and business support service provider. Specifically, the business assists in commercial relocation, asset management and warehousing, records and information management, new furniture sales, furniture refurbishing, and administrative support. It also provides assembly and installation services for the office furniture it sells, which includes workspace cubicles. Pioneer subcontracted with NOYPI Movers, L.L.C., to provide additional workers to assist with clients both in and out of Texas. NOYPI employees were hired for distinct assignments—some for driving, others for moving, and still others for installing furniture, a role called "Panel Tech."

Pioneer and NOYPI together utilized about 35 commercial trucks for their moving services. And although the companies together carried out 545 jobs from 2012 to 2014, only a small portion of the two companies' joint services were provided to out-of-state clients. Pioneer's Vice President asserted just 15 required deliveries across state lines.

Amaya was an NOYPI employee hired by Pioneer as a Panel Tech to install workspace cubicles. The remaining contours of Amaya's position are disputed in the record. Pioneer's Vice President asserted that, in this capacity, Amaya and other furniture-installing employees were also responsible for loading the trucks that transported office furniture, and, specifically, the deliveries that travelled across state lines. But Amaya testified by deposition that he rarely engaged in truck-loading. Furthermore, he could not recall "ever traveling outside of Texas when [he] worked for" NOYPI; indeed, the vast majority of his work remained within Houston.

No. 17-20635

On April 9, 2015, Amaya filed a collective action lawsuit on behalf of other "installer[s] of office furniture," seeking unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). The defendants filed a motion for summary judgment on January 9, 2017, asserting that his overtime claim should be dismissed under the Motor Carrier Act ("MCA") exemption—an argument they had also raised as an affirmative defense. On September 30, 2017, the district court agreed and granted the motion for summary judgment. Final Judgment was entered a few days later, and Amaya timely appealed.

II.

We review a grant of summary judgment de novo, applying the same standards as the district court. *Luv N' Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 446–47 (5th Cir. 2016). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must review the evidence "in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2010). Further, we have established that, "[f]or a defendant to obtain summary judgment on an affirmative defense, it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare, Inc.*, 468 F.3d 237, 241 (5th Cir. 2006).

The defendants have the burden to prove that the MCA exemption applies. *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990). As recently clarified by the Supreme Court, the FLSA's list of exemptions must be given a "'fair reading,' as opposed to the narrow interpretation previously espoused by this and other circuits." *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575,

No. 17-20635

579 (5th Cir. 2018) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)).[2]

The FLSA requires employers to pay an employee one and a half times his "regular rate" for time spent working beyond forty hours in a week. 29 U.S.C. § 207(a)(1). The MCA exemption to this requirement is introduced by the FLSA itself. Specifically, the statute notes that the overtime requirement does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." *Id.* § 213(b)(1). Section 31502, in turn, permits the Secretary to "prescribe requirements for . . . qualifications and maximum hours of service of employees of . . . motor carrier[s]" and "motor private carrier[s]." 49 U.S.C. § 31502(b).

The Department of Labor promulgated regulations to define these employees further. Specifically, they:

> (1) [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the [MCA] . . . and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA].

29 C.F.R. § 782.2(a); *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014). As this court has long noted, this definition comprises qualifications

---

[2] We note that our prior opinions on the MCA exemption enunciated this now-erroneous principle of construction. *See, e.g.*, *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014); *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2010). But the central analyses of these decisions remain unaffected because they concern the interpretation and application of FLSA-implementing regulations, not the statute itself. *See Allen*, 755 F.3d at 283–85; *Songer*, 618 F.3d at 473–76. Accordingly, our reliance on these cases and the regulations they evaluate (whose applicability is not disputed by the parties) remains unaffected by *Encino Motorcars*.

for both the employer and employee. *Songer*, 618 F.3d at 472. "For the motor carrier exemption to apply . . . [the employees] must meet both of these requirements." *Allen*, 755 F.3d at 283 (internal quotation omitted). As Amaya has conceded that his employer qualifies as a carrier subject to the Secretary's jurisdiction, we need only focus on the latter—that is, the status of Amaya and the class of employees he represents.

The MCA exemption is available only to certain types of employees who perform a specific type of work. Only employees who—either "wholly or in part"—engage in work as "drivers, driver's helpers, loaders, [or] mechanics" may be exempt. 29 C.F.R. § 782.2(b)(2)(i). Relevant here, the duties of loaders "include, among other things, the proper loading of [their] employer's motor vehicles so that they may be safely operated on the highways of the country." *Id.* § 782.5. Notably, the responsibility must not be a "casual[] or occasional . . . part of an employee's activities." *Id.* As to the type of work, the court must discern whether it "directly affect[s] the safety of operation of motor vehicles on the public highways in transportation in interstate . . . commerce." *Id.* § 782.2(b)(2)(ii).

The proper application of these requirements entails an analysis that is both specific and general. On the one hand, courts do not merely rely on "the name given to [the] position nor that given to the work" done. *Allen*, 755 F.3d at 283 (quoting 29 C.F.R. § 782.2(b)(2)). Instead, "[i]t is the character of the activities rather than the proportion of either the employee's time or of his activities" that controls. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 674–75 (1947); *see* 29 C.F.R. § 782.2(b)(2). Conversely, consistent with regulatory guidance, we have never set a specific quantification of how frequently employees must engage in the sort of work that would qualify for the MCA exemption. For example, "we look to whether the employees 'could reasonably have been expected to [engage] in interstate commerce consistent with their

job duties.'" *Allen*, 755 F.3d at 284 (quoting *Songer*, 618 F.3d at 476); *see* 29 C.F.R. § 782.2(b)(3) (noting that the determination must look to what an employee does in "the ordinary course of his work"). Moreover, we evaluate the work of the employees on a class-wide basis, "even if, in doing so, the effect is to apply the MCA exemption to employees who rarely, or never, engage in interstate commerce." *Id.* at 287.

To be sure, when evaluating the nature of work from a class-wide perspective, we do not require a particularly high concentration of qualifying work in order to meet the MCA exception. *See, e.g.*, *Morris v. McComb*, 332 U.S. 422, 433–34 (1947) (MCA exception applies when only 4% of the employees' work involved interstate transport); *Songer*, 618 F.3d at 475–76 (employees had a reasonable expectation when only 2.75% of freights were transported interstate). Indeed, in *Morris*, the Court applied the exception despite the fact that two of 43 drivers in the class had never engaged in interstate commerce. 332 U.S. at 433.

Yet, we cannot merely rubber-stamp an employer's assertion that the MCA exemption applies. Notably, "where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to [the employee]." 29 C.F.R. § 782.2(b)(3); *see Allen*, 755 F.3d at 284; *Wirtz v. C & P Shoe Corp.*, 336 F.2d 21, 29–30 (5th Cir. 1964) (no FLSA exemption for employees "who sporadically helped on the trucks or acted as drivers").

After weighing these various standards and reviewing the record, we cannot agree with the district court that the defendants have met their burden. For one, the record evidence indicates Amaya and the class of employees for which he brings this action are hired for the purpose of installing office cubicles ordered by the defendants' clients. It is true that Pioneer's Vice President's

declaration broadly asserted that "NOYPI employees, including Juan Amaya," were responsible for loading commercial trucks and were required "to exercise judgment and discretion" to ensure the safe transit of the load. But Amaya testified that he was "hardly ever" involved in such activities. He could recall loading items only a "few times" during his years with the company. Moreover, he described his loading work as "help[ing] . . . carry the cubicles onto the trucks." At the very least, there remains a material issue of fact as to whether the loading activities of Amaya and other furniture-installing Panel Tech employees were too "casual or occasional" to qualify them as "loaders." 29 C.F.R. § 782.5.

Furthermore, the record lacks a sufficient evidentiary basis to tie the loading work done by Panel Techs specifically to interstate commerce. The declaration merely states that NOYPI employees "loaded . . . commercial trucks on approximately 545 different jobs" between 2012 and 2014, and that "15 of those jobs in which . . . trucks were loaded by NOYPI employees, including Juan Amaya, required interstate travel." The record also includes certain work orders that required interstate deliveries listing Pioneer employees involved. Notably, only two list the involvement of NOYPI Panel Techs, and they provide no information regarding the nature of their involvement. This is an insufficient basis to establish that Amaya and his class "could reasonably have been expected" to load trucks engaged in interstate commerce. *Allen*, 755 F.3d at 284 (quoting *Songer*, 618 F.3d at 476).

To see why this is so, it is important to remember that NOYPI employees were hired for different tasks, but the lawsuit here only concerns the actions of a distinct subset: Panel Tech. The aforementioned evidence fails to establish how frequently these furniture-installing employees loaded any trucks for Pioneer—let alone the fifteen trucks that crossed state borders. If anything, the evidence (namely, Amaya's own deposition testimony) suggests Panel Tech

employees were rarely involved in any loading activities. And Amaya's own work never caused him to travel interstate.

To be sure (and as we have noted), the connection between workers and interstate commerce can be quite thin. But the guiding case law all presupposes that there exists at least *some* connection. For example, *Morris* and *Songer* both involved classes comprising truck drivers who were directly responsible for transporting activities. *Morris*, 332 U.S. at 431–35; *Songer*, 618 F.3d at 473–76. Although only a small percentage of their work was tied to interstate transport, it was clear from the record that this percentage could still be attributed to work done by the class. *Id.* Here, the record provides no such clarification.

In short, applying both the summary judgment standard of review to the evidence and the relevant burden for establishing an MCA exemption, the defendants have failed to provide sufficient evidence to prove that any of the workers in the plaintiff's class were involved as loaders with the 15 interstate shipments that the declaration attributes to NOYPI employees.

III.

We REVERSE the district court's judgment, and REMAND the matter for further proceedings.