**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3679
_____

JOSEPH RESCH,
ON BEHALF OF HIMSELF AND OTHERS SIMILARLY
SITUATED,

Appellant

v.

KRAPF'S COACHES, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:11-cv-06893)
District Judge: Hon. William H. Yohn
_____

Argued: April 15, 2015
_____

Before: AMBRO, VANASKIE, and SHWARTZ, <u>Circuit
Judges</u>.

(Filed:  May 12, 2015)
_____

OPINION
_____

R. Andrew Santillo, Esq. [ARGUED]
Peter D. Winebrake, Esq.
Winebrake & Santillo
715 Twinning Road
Suite 211, Twinning Office Center
Dresher, PA 19025

        Counsel for Appellant

Randall C. Schauer, Esq. [ARGUED]
Jennifer J. Hanlin, Esq.
Fox Rothschild
747 Constitution Drive
Suite 100
Exton, PA 19341

        Counsel for Appellee

SHWARTZ, <u>Circuit Judge</u>.

        Joseph Resch, a driver for Krapf's Coaches, Inc. ("KCI"), filed this collective action on behalf of himself and thirty-three other KCI drivers (collectively, "Plaintiffs") seeking unpaid overtime under the Fair Labor Standards Act of 1938 ("FLSA") and the Pennsylvania Minimum Wage Act of 1968 ("PMWA"). Because Plaintiffs fall within the "Motor Carrier Act exemption" to these statutes' overtime provisions, the District Court correctly granted summary judgment to KCI and we will therefore affirm.

I

KCI is a motor coach company based in West Chester, Pennsylvania, and has a Transit Division that provides bus and shuttle services on set routes. Since 2009, KCI has operated thirty-two such routes, four of which cross state lines. From 2009 through 2012, the share of total Transit Division revenue generated by interstate routes fluctuated between 1.0% and 9.7%.

KCI employs between thirty-six and sixty-two drivers in a given month and trains its drivers on multiple interstate and intrastate routes. Plaintiffs concede that KCI retains the discretion to assign a driver to any route on which he has been trained, including interstate routes, and to discipline a driver who refuses to drive a route as assigned.

Because KCI is a "common carrier by motor vehicle" authorized to engage in interstate commerce, it is subject to Federal Motor Carrier Safety Administration ("FMCSA") regulations.[1] JA 330a. Accordingly, KCI possesses a U.S. Department of Transportation ("DOT") registration number, requires that each driver possess a Commercial Driver License ("CDL"), maintains a "Driver Qualification File" for each driver that includes FMCSA-required documentation, and must submit to DOT audits to ensure its compliance with FMCSA regulations. KCI also provides each driver with a "Federal Motor Carrier Safety Regulations Pocketbook"

---

[1] The FMCSA is an administration within the U.S. Department of Transportation responsible for regulating commercial motor carriers. See 49 U.S.C. § 113.

detailing the driver's responsibilities under DOT regulations, JA 81a, as well as a separate KCI Handbook making clear that they "are expected to meet" FMCSA regulations. JA 77a.

Plaintiffs were Transit Division drivers who, at some point during the relevant time period, worked more than forty hours in a week without receiving overtime pay. Of the 13,956 total "trips" Plaintiffs drove, 178 (or 1.3%) required them to cross state lines. Sixteen plaintiffs never crossed state lines, eight crossed state lines only one time, and five crossed state lines fewer than five times.[2]

Resch brought this collective action under the FLSA and PMWA to recover unpaid overtime. The District Court granted his request to conditionally certify a class of "individuals who were employed by defendant as Transit Route drivers who worked over 40 hours during any workweek within the past three years," JA 49a, and thereafter granted KCI's summary judgment motion, holding that Plaintiffs are ineligible for overtime under the Motor Carrier Act exemption to the FLSA and PMWA. 29 U.S.C. § 213(b)(1); 43 Pa. Cons. Stat. Ann. § 333.105(b)(7). Plaintiffs appeal.

II[3]

_____

[2] The remaining five plaintiffs drove interstate 58 (3.1%), 43 (16.5%), 25 (4.4%), 16 (37.2%), and 11 (6.4%) times, respectively. JA 136a.

[3] The District Court had jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. We exercise jurisdiction under 28 U.S.C. § 1291. Our review of the grant of summary

A

This appeal requires consideration of two statutes: the FLSA and the Motor Carrier Act of 1935 (the "MCA").[4] The FLSA "requires employers to pay overtime compensation to employees who work more than forty hours per week, unless one or another of certain exemptions applies." Packard v. Pittsburgh Transp. Co., 418 F.3d 246, 250 (3d Cir. 2005); 29 U.S.C. § 207(a)(1). Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours" and to ensure that covered employees "would receive a fair day's pay for a fair day's work." Parker v. NutriSystem, Inc., 620 F.3d 274, 279 (3d Cir. 2010) (internal quotation marks and alterations omitted).

Congress enacted the MCA in response to a "wide scope of [] problems" in the motor carrier industry and "to adjust a new and growing transportation service to the needs of the public." United States v. Am. Trucking Ass'ns, 310

---

judgment is plenary. Mylan Inc. v. SmithKline Beecham Corp., 723 F.3d 413, 418 (3d Cir. 2013). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed issue is "genuine" only "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). We view the facts and draw all reasonable inferences in the non-movant's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 266–67 (3d Cir. 2005).

[4] The parties agree that identical principles govern Plaintiffs' PMWA claim.

5

U.S. 534, 538 & 542 (1940). The MCA "vest[s] in the [DOT] power to establish reasonable requirements with respect to qualifications and maximum hours of service of employees and safety of operation and equipment of common and contract carriers by motor vehicle."[5] Levinson v. Spector Motor Serv., 330 U.S. 649, 658 (1947). The MCA's requirements in this area are "intended to prevent accidents due to fatigue, without regard to consideration of adequacy of compensation." Starrett v. Bruce, 391 F.2d 320, 323 (10th Cir. 1968).

At issue is the MCA exemption that removes from the FLSA's overtime protections "any employee with respect to whom the Secretary of Transportation has [the] power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49" of the MCA. 29 U.S.C. § 213(b)(1). Section 31502(a)(1) applies to transportation "described in" § 13501, which in turn gives the DOT jurisdiction "over transportation by motor carrier . . . to the extent that passengers, property, or both, are transported by motor carrier . . . between a place in . . . a State and a place in another State." 49 U.S.C. § 13501. Through the MCA exemption, Congress has "prohibited the overlapping of . . . jurisdiction" between the U.S. Department of Labor and the DOT regarding "maximum hours of service." Levinson, 330 U.S. at 661; see also Southland Gasoline Co. v. Bayley, 319 U.S. 44, 48 (1943) (because it enacted the MCA before the FLSA, Congress apparently relied on the MCA to "work out

---

[5] In 1966, the DOT assumed the Interstate Commerce Commission's [ICC] authority to regulate motor vehicle carriers. Moore v. Universal Coordinators, Inc., 423 F.2d 96, 97 n.1 (3d Cir. 1970).

satisfactory adjustments for employees charged with the safety of operations" in the transportation industry); McMaster v. E. Armored Servs., Inc., 780 F.3d 167, 171 (3d Cir. 2015) (recognizing that the MCA "establish[es] a strict separation between the Secretary of Transportation's jurisdiction and the ambit of the [FLSA's] overtime guarantee").

Two considerations dictate whether the MCA exemption applies: the class of the employer and the class of work the employees perform. See 29 C.F.R. § 782.2(a). Specifically, the MCA exemption applies if the employer is a carrier subject to the DOT's jurisdiction and the employee is a member of a class of employees that "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the [MCA]." Id. In determining whether the exemption applies, we are mindful of the FLSA's broad remedial purposes, and "that exemptions from the FLSA are construed narrowly[] against the employer," with the employer bearing the burden to prove "plainly and unmistakably" that its employees are exempt. Packard, 418 F.3d at 250.[6]

B

The parties agree that KCI is a "motor carrier" subject

---

[6] Whether employees' "particular activities excluded them from the overtime benefits of the FLSA is a question of law." Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986).

7

to the DOT's jurisdiction, thus satisfying the first requirement. We must therefore examine whether Plaintiffs—many of whom rarely or never crossed state lines—satisfy the second requirement by being a member of a class of employees engaging "in activities of a character directly affecting the safety of operation of motor vehicles in the transportation . . . of passengers or property" in interstate commerce. 29 C.F.R. § 782.2(a). The District Court answered yes to this question based primarily on Morris v. McComb, 332 U.S. 422 (1947).

In Morris, the Supreme Court addressed whether a group of truck drivers and mechanics employed by a Detroit-based common carrier fell within the MCA exemption. Only 3.65% of the truck drivers' trips were interstate, and the employer assigned such trips to the truck drivers "generally throughout the year" and "in the normal operation of [its] business." Morris, 332 U.S. at 433. All of the truck drivers "shared indiscriminately" in the interstate trips, which were "mingled with the performance of other like driving services [they] rendered." Id. Of the employer's forty-three truck drivers: "every driver[] except two[] made at least one" interstate trip; the average truck driver made sixteen interstate trips; and the only two truck drivers who did not drive interstate had been employed "for only about one-half the year and that was during the months when the trips in interstate commerce were . . . less frequent." Id.

The Supreme Court held that the DOT's predecessor, the ICC, had jurisdiction to regulate all forty-three drivers—even those who never drove interstate—and that none of the drivers were entitled to overtime under the FLSA. See id. at 434–36. "From the point of view of safety in interstate

8

commerce," the Supreme Court reasoned, the case would be the same "if each [of the employer's] driver[s] drove 4% of his driving time each day in interstate commerce," as there would be "the same essential need for the [ICC's] establishment of reasonable requirements with respect to qualifications and maximum hours of service of employees." Id. at 434; see also Starrett, 391 F.2d at 323 (observing that "it is not the amount of time an employee spends in work affecting [interstate] safety, rather it is what he may do in the time thus spent, whether it be large or small, that determines the effect on safety").

Applicable regulations echo the Morris Court's focus on the "class of work" performed by the employees occupying the same position, 29 C.F.R. § 782.2(a), and the likelihood of the employer distributing those duties among the employees in question:

> As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or . . . is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of [a driver, driver's helper, loader, or mechanic], he comes within the exemption in all workweeks when he is employed at such job. This general rule assumes that the activities involved in the continuing duties of the job in all such workweeks will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in transportation in interstate

9

> commerce. Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation."

29 C.F.R. § 782.2(b)(3); see also Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37,902–02, 37,903 (July 23, 1981) ("DOT Notice") ("a driver will remain under the [DOT's] jurisdiction . . . for as long as the driver is in a position to be called upon to drive in interstate commerce as part of the driver's regular duties."). The DOT has jurisdiction "even if the driver has not personally driven in interstate commerce if, because of company policy and activity, the driver could reasonably be expected to do interstate driving." DOT Notice, 46 Fed. Reg. at 37,903 (citing Morris, 332 U.S. 422). Moreover, whether an employee "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles" in interstate commerce, 29 C.F.R. § 782.2(a), depends "neither [on] the name given to his position nor that given to the work that he does," id. § 782.2(b)(2) (citing Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 707 (1947)). Put simply, it is "the character of the activities rather than the proportion of either the employee's time or of his activities" that controls. Levinson, 330 U.S. at 674.[7]

---

[7] Because the inquiry focuses on what the class of employees could have reasonably been expected to do, the District Court properly declined Plaintiffs' request to perform

10

"On the other hand, where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to [the employee] in any workweek so long as there is no change in his duties."  29 C.F.R. § 782.2(b)(3) (citing Pyramid, 330 U.S. at 707–08). The DOT thus "has authority over drivers only where the employees regularly travel interstate or reasonably are expected to do interstate driving."  DOT Notice, 46 Fed. Reg. at 37,903.

Therefore, the relevant inquiry here is whether Plaintiffs reasonably could have expected to drive interstate, which we answer by "look[ing] at," among other things, "whether the carrier (employer) does any interstate work," "assigns drivers randomly to that driving," and maintains a "company policy and activity" of interstate driving.  Id. (citing Morris, 332 U.S. 422).  The undisputed evidence establishes that, during the relevant time period, 6.9% of all trips drivers took were interstate, as much as 9.7% of the Transit division's annual revenues derived from interstate routes, and KCI always operated at least one interstate route per month.  With regard to distribution of interstate routes, KCI had a "company policy" of training its drivers on as many routes as possible, retaining discretion to assign drivers to drive either interstate or intrastate routes—at any time—on which they had been trained, and disciplining any driver who refused.  See 46 Fed. Reg. at 37,903.  Given this evidence, the

an "individualized analysis" of the "actual employment circumstances" of each Plaintiff.

District Court properly found no genuine dispute of material fact regarding whether Plaintiffs reasonably could have expected to drive interstate. Friedrich v. U.S. Computer Servs., 974 F.2d 409, 417 (3d Cir. 1992).

Further, unrefuted evidence reflects KCI's adherence to federal regulations regarding the drivers. For instance, KCI requires that each driver possess a valid CDL, comply with FMCSA drug testing requirements, submit to regular DOT physical examinations, and provide a pre-employment "Safety Performance History Record." App. 77a. KCI also maintains DOT-required "Driver Qualification Files" for all drivers, App. 77a, which the FMCSA audits for compliance on a recurring basis. KCI also issues all drivers a "KCI Handbook" advising them of KCI's expectation that they meet these requirements, App. 77a, as well as a separate "Pocketbook" detailing the FMCSA regulations. Since 2012, KCI has also required all drivers to complete a "Self Certification Form" wherein they check a box describing themselves as "NI-Non-Excepted Interstate Transportation: Interstate Drivers Who are Subject to the Federal Physical Qualifications and Examination Regulations." App. 80a. This recognition on the part of the drivers, together with evidence of KCI's efforts to comply with DOT regulations— which in large part consist of safety measures imposed on, and communicated directly to, the drivers— reinforce the drivers' reasonable expectation of driving in interstate commerce. See, e.g., Songer v. Dillon Res., Inc., 618 F.3d 467, 469–70 (5th Cir. 2010) (holding that truck drivers fell within MCA exemption where employer required them each to hold "a valid Class A commercial driver['s] license and meet the driver qualification requirements of" the FMCSA, and issued them the Pocketbook containing "a compilation of

12

relevant regulatory information"). Because KCI is an employer under the jurisdiction of the DOT and Plaintiffs are members of a class of employees who could reasonably be expected to drive interstate routes as part of their duties, the MCA exemption to the FLSA applies and Plaintiffs are ineligible for FLSA overtime wages.

C

Lastly, we reject Plaintiffs' attempted reliance on the de minimis exception. See 29 C.F.R. § 782.2(b)(3) (noting that the MCA exemption does not apply where the "safety-affecting activities" of the employee's "continuing duties" "are so trivial, casual, and insignificant as to be de minimis" (citing Pyramid, 330 U.S. at 707–08)). Although the Supreme Court "has recognized a de minimis exception to the application of the MCA," we have noted that "[a] number of courts have held that drivers should seldom, if ever, fall within [it]." Friedrich, 974 F.2d at 416, 417 n.10 (citing cases); see also Crooker v. Sexton Motors, Inc., 469 F.2d 206, 210 (1st Cir. 1972) ("The activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial."). Indeed, the DOT has recognized courts' resistance to applying this exception to drivers. DOT Notice, 46 Fed. Reg. at 37,903 ("The courts that have applied this principle find that it should seldom, if ever, be applied to drivers because of the direct effect of driving on the safety of motor vehicle operations."). "This is because the driver's work more obviously and dramatically affects the safety of operation of the carrier during every moment that he is driving than does the work of the loader who loaded the freight which the driver is transporting." Levinson, 330 U.S. at 678.

13

The only binding authority regarding the de minimis exception to which Plaintiffs direct us concerns employees engaged in "the mere handling of freight at a terminal[] before or after loading" such that none of their activities affected "the safety of operation of motor vehicles" in interstate commerce so as to "come within the kind of 'loading'" contemplated under the MCA. Pyramid, 330 U.S. at 708; see also, e.g., Reich v. Am. Driver Serv., Inc., 33 F.3d 1153, 1157 (9th Cir. 1994) (reversing and remanding where there was no evidence at all that company engaged in interstate commerce during relevant time frame and expressly distinguishing "claims of jurisdiction over a motor carrier's drivers who have not driven in interstate commerce when there is evidence that other drivers employed by the motor carrier have driven in interstate commerce"). Other cases "suggest that a company's interstate business is de minimis if it constitutes less than one percent of the overall trips taken by the company," Walters v. Am. Coach Lines of Miami, Inc., 575 F.3d 1221, 1228 (11th Cir. 2009), circumstances not present here, see also id. (finding "no cases" applying the de minimis exception to an employer that "has the appropriate federal licensing and [where] there is undisputed proof of some transportation that crosses state lines"). Given the undisputed facts concerning KCI's interstate operations, which accounted for 1% to 9.7% of its Transit Division's revenue, and Plaintiffs' occupation, we decline to apply the de minimis exception.

## III

Thus, we will affirm the orders of the District Court.

14