Alphonse **MAZZARELLA,**

v.

**FAST RIG SUPPORT, LLC; First Americans Shipping and Trucking, Inc., Appellants.**

No. 15–3116.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) May 20, 2016.

Filed: May 23, 2016.

William E. Vinsko, Jr., Esq., Wilkes–Barre, PA, for Appellant.

Mark J. Gottesfeld, Esq., R. Andrew Santillo, Esq., Peter D. Winebrake, Esq., Winebrake & Santillo, Dresher, PA, for Appellee.

Before: SMITH, HARDIMAN, and SHWARTZ, Circuit Judges.

## OPINION OF THE COURT

SHWARTZ, Circuit Judge.

Trucking companies Fast Rig Support, LLC and First Americans Shipping and Trucking, Inc., (collectively, "Defendants"), appeal the stipulated judgment requiring them to pay Plaintiffs overtime. Because the District Court correctly determined that Defendants have not met their burden to show that the Motor Carrier Act ("MCA") exemption to the overtime provisions in the Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA") applies, see 29 U.S.C. § 207(a)(1); 43 Pa. Stat. Ann. § 333.104(c), we will affirm.

I

Plaintiffs, including Alphonse Mazzarella, worked for Defendants as truck drivers. They transported water to hydraulic fracking sites within Pennsylvania.[1] Mazzarella asserts that he and his coworkers often worked more than forty hours in a week, but were paid overtime only for work performed above forty-five hours per week, in violation of the overtime provisions of the FLSA and PMWA.[2]

Before trial was scheduled to begin, the District Court ordered the parties to submit briefing on whether the Defendants were subject to the MCA exemption to the FLSA's overtime requirements. As explained *infra*, the MCA provides that certain interstate employment activity that is subject to the jurisdiction of the Department of Transportation is exempt from certain requirements, such as the FLSA's overtime provisions.

In support of applying the MCA, Defendants explained that they contract with gas-drilling companies to transport water from "retention ponds" to drill sites for hydraulic fracking. Defendants assert that after fracking is completed, they are occasionally hired to transport the water used in the fracking process to injection wells for disposal. Although Defendants presented detailed arguments about the fracking process in their briefs, they submitted no evidence on this topic. Rather, Defendants submitted only: (1) a certificate issued by the Department of Transportation authorizing Defendant First Americans to "engage in transportation as a common carrier of property . . . in inter-

---

1. Although Defendants assert that "[i]n many instances, the drivers do leave the Commonwealth of Pennsylvania during the ordinary course of their employment," App. II at 15, they do not deny that their drivers' primary responsibilities involved the transportation of water within Pennsylvania itself, and as discussed further herein, provide no evidence to substantiate the claim that the drivers leave Pennsylvania as part of their duties.

2. The parties stipulated to the conditional certification of a collective FLSA action, and Plaintiffs withdrew their class action claims under the PMWA.

state or foreign commerce," App. II at 50; (2) a news article about another company in Pennsylvania and regulatory decisions being made about the fracking industry; and (3) a one-page spreadsheet which appears to record water shipments over a three-day period in January 2013.

The District Court held that the water Defendants transported constituted property for purposes of applying the MCA, but that Defendants had not shown the water and drivers were engaged in a "continuous stream of interstate travel." App. I at 16–17. The District Court noted that its own research disclosed that water involved in the fracking process becomes "contaminated," App. I at 18, and "substantially modified," and thus Defendants were engaged in "two separate commercial transactions," one before the water becomes "tainted" and one after the fracking process is complete, leading to the conclusion that there was no continuous movement of an unaltered item across state lines and "insufficient evidence of interstate intent" on Defendants' part to apply the MCA exemption, App. I at 20–21.

The parties agreed to the entry of a conditional judgment awarding Plaintiffs $31,000, which allowed Defendants to ap-

peal the ruling precluding them from relying on the MCA exemption.[3]

## II.[4]

█ The FLSA generally mandates that employers pay employees 150% of their hourly wage for all time worked above forty hours per week.[5] 29 U.S.C. § 207(a)(1). Several categories of employees are exempt from this requirement, including "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service" under 49 U.S.C. § 31502. 29 U.S.C. § 213(b)(1). There is no dispute that Plaintiff and his coworkers work for and Defendants are motor carriers subject to the Department of Transportation's jurisdiction. *See* 49 U.S.C. § 13102(14). The question here is whether Defendants are engaged in transportation between "a State and a place in another State." 49 U.S.C. § 13501. If so, then they are exempt from the FLSA's overtime provisions pursuant to the MCA. *See* 29 U.S.C. § 213(b)(1).

█ FLSA exemptions must be construed narrowly against the employer, and Defendants "bear[ ] the burden of proving 'plainly and unmistakably' that the drivers qualify for the MCA exemption." *Packard*

---

**3.** Defendants' notice of appeal seeks review of "the final judgment entered in this action." App. I at 1. However, based upon the arguments presented in the parties' briefs and the contents of the stipulated judgment, we understand the parties are seeking review of the District Court's order that held the MCA exemption did not apply.

**4.** The District Court had jurisdiction over Plaintiffs' FLSA claim pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and the PMWA claim pursuant to 28 U.S.C. § 1367, and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The question of "[w]hether an employee's particular activities excluded them from the overtime benefits of the FLSA is a question of law." *Resch v.*

*Krapf's Coaches, Inc.,* 785 F.3d 869, 872 n. 6 (3d Cir.2015) (quoting *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986)). Accordingly, we exercise plenary review over the District Court's legal conclusions. *See Post v. St. Paul Travelers Ins. Co.,* 691 F.3d 500, 514–15 (3d Cir.2012); *Kosiba v. Merck & Co.,* 384 F.3d 58, 64 (3d Cir.2004).

**5.** This analysis applies equally to the FLSA and PMWA claims, given the similarities between the MCA in each statute. *See* 29 U.S.C. § 213(b)(1) (FLSA exemption); 43 Pa. Stat. Ann. § 333.105(b)(7) (PMWA exemption); *see also Resch,* 785 F.3d at 871 n. 4 (noting that identical principles govern claims under FLSA and PMWA exemptions).

*v. Pittsburgh Transp. Co.,* 418 F.3d 246, 250 (3d Cir.2005) (citing *Friedrich v. U.S. Comput. Servs.,* 974 F.2d 409, 412 (3d Cir. 1992)). Whether the exemption applies to a particular employer depends on "the class of the employer and the class of work the employees perform." *Resch v. Krapf's Coaches, Inc.,* 785 F.3d 869, 872 (3d Cir. 2015) (citing 29 C.F.R. § 782.2(a)). The exemption applies if the employer "engage[s] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce."[6] 29 C.F.R. § 782.2(a). When the transportation takes place within a single state, the interstate commerce requirement may still be met by demonstrating that the employee's work involves a " 'practical continuity of movement' across State lines." 29 C.F.R. § 782.7(b)(1) (quoting *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 568, 63 S.Ct. 332, 87 L.Ed. 460 (1943)).[7] Assessing whether "continuity of movement" exists focuses on the "essential character of the movement." *Packard,* 418 F.3d at 255 (citing *Balt. & Ohio Sw. R.R. Co. v. Settle,* 260 U.S. 166, 170–73, 43 S.Ct. 28, 67 L.Ed. 189 (1922)). For example, the Court of Appeals for the Second Circuit examined whether the MCA exemption applied to a distributor who brought beverages into New York from out of state, then had its drivers deliver the beverages to customers solely within the state, and later collect empty bottles for return to the employer's warehouse for recycling and shipment out of state. *Bilyou v. Dutchess Beer Distribs., Inc.,* 300 F.3d 217, 219–20 (2d Cir.2002). The court held that the distributor's drivers, who worked entirely within New York, were exempt from the FLSA's overtime provisions because their "carriage was merely one leg of a route to an out-of-state destination," and "part of a continuous movement of goods in interstate commerce." *Id.* at 224.

 Here, to demonstrate that their employees are engaged in interstate commerce under the MCA exemption, Defendants must similarly show that the drivers' transportation of water is part of a "continuous stream of interstate travel." *Walters v. Am. Coach Lines of Miami, Inc.,* 575 F.3d 1221, 1229 (11th Cir.2009) (quoting *Chao v. First Class Coach Co., Inc.,* 214 F.Supp.2d 1263, 1272 (M.D.Fla.2001)). Courts look to a number of factors to assess whether the employees and their activities are sufficiently involved in interstate commerce, including: (1) whether and to what extent a product pauses in a warehouse or other location during transport before reaching its final destination, *Bilyou,* 300 F.3d at 222–24; (2) whether the product is altered in any way during its transport, *Collins v. Heritage Wine Cellars, Ltd.,* 589 F.3d 895, 898–99 (7th Cir.2009); (3) the employer's intent concerning the delivery of the product at the time the transportation commences, *see id.*; and (4) whether the employer's business "involve[s] an integrated system of interstate shipments." *Packard,* 418 F.3d at 255; *compare id.* (declining to apply the MCA exemption where handicap ride access drivers occasionally drove passengers to a bus or railroad station for interstate travel, but were not part of a regular stream of commerce), *with Abel v. S. Shut-*

---

6. The District Court held that because the water had economic value to Defendants, it could be sufficiently considered property for purposes of applying the exemption. Neither party challenges that ruling on appeal.

7. These regulations are persuasive but not binding in determining the scope of the MCA exemption and definition of interstate commerce. *See Packard,* 418 F.3d at 251–54 & nn. 5, 8.

*tle Servs., Inc.*, 631 F.3d 1210, 1216–18 (11th Cir.2011) (per curiam) (applying MCA exemption to airport shuttle company because passenger reservations were often purchased as part of a package deal with airline tickets, creating a practical continuity of movement in interstate commerce). While no single factor is required or controlling, a factor's presence or absence may reveal the employer's "fixed and persisting intent" at the time the shipment commenced, which is important to showing the existence of practical continuity of movement in interstate commerce. *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 673 (10th Cir.1993) (citing 29 C.F.R. § 782.7(b)(2)).

In this case, none of the three pieces of evidence Defendants produced demonstrate that their drivers were involved in a continuity of movement in interstate commerce. The DOT certificate merely authorizes Defendants to engage in interstate transportation. It provides no information about whether Defendants' drivers actually drove across state lines or otherwise engaged in interstate commerce.[8] Similarly, the online news article Defendants provided offers, at best, general information that most fracking wastewater

is trucked out of Pennsylvania to Ohio, but says nothing about any of the water Defendants' employees transport. Finally, the spreadsheet Defendants submitted shows, at most, that specific shipments of water are tracked and bound for specific interim destinations within Pennsylvania before being used in the fracking process.[9] None of this evidence shows that the drivers or water were part of the practical continuity of movement in interstate commerce.[10]

■■■ Beyond this limited evidence, Defendants present only bare assertions, without evidentiary support in the record, about the fracking process and transportation in interstate commerce. For instance, Defendants assert in their brief that water is sometimes picked up from sites in New York rather than Pennsylvania, and Defendants are sometimes contracted to haul wastewater to Ohio. This assertion, however, is not backed up with evidence. Moreover, even if the Defendants presented evidence supporting these assertions, it would not, by itself, demonstrate that their actions are a "clearly identifiable element of an integrated interstate distribution system." *Packard*, 418 F.3d at 254. The

---

8. The certificate itself references only that the authorization will continue "as long as the carrier maintains compliance" with insurance coverage and process server designation requirements, as well as a requirement that the carrier "render reasonably continuous and adequate service to the public." App. II at 50.

9. Defendants' brief states that this spreadsheet reflects the care with which they account for the water transported, and they contend this supports a finding of "interstate intent." Appellant's Br. 12. However, nothing in the spreadsheet provides a basis to infer Defendants intended to transport water recorded on the sheet out of state.

10. The District Court noted the general insufficiency of the evidence Defendants presented, and apparently conducted its own research,

concluding that the fact that water becomes "contaminated," App. I at 18, and "tainted" during the fracking process sufficiently changed the character of the water to demonstrate that "defendants' trucking activities constitute two separate commercial transactions," one involving delivery of the water, and the second picking up and transporting the water to Ohio, App. I at 20. The evidentiary record provided by the parties lacks facts from which we can reach this conclusion, and we decline to look outside the record to address it. *See Fassett v. Delta Kappa Epsilon (N.Y.)*, 807 F.2d 1150, 1165 (3d Cir. 1986) ("The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court.").

mere fact that a journey which begins with Defendants transporting water from retention ponds and ends with water being driven from Pennsylvania into Ohio does not alone demonstrate Defendants were part of "an integrated system of interstate shipments" sufficient to satisfy Defendants' burden.[11] *Id.* at 255.

■ The details of a business's operation are often critical to determining the connection between an employee's actions and interstate commerce. *See, e.g., Morris v. McComb*, 332 U.S. 422, 431–33, 68 S.Ct. 131, 92 L.Ed. 44 (1947) (considering the proportion of a defendant's interstate activities within its overall business operations and whether a plaintiff could be assigned to such activities). As the Court of Appeals for the Seventh Circuit noted, minor differences in timing, title to the property being transported, and a predetermined destination for the items being transported can be dispositive of whether the MCA exemption applies. *Collins*, 589 F.3d at 897–98 (noting that if an employer purchased wine from out of state, shipped the wine into the state, and used its truck drivers merely to transport wine, it would be subject to the exemption—but if the same importer shipped its wine to a wholesale distributor who took title over the product and used its own trucks for distribution, the shipments would be purely intrastate and not subject to the MCA). Similarly, the relationship between Defendants, the fracking companies, and the movement of the wastewater out of state could theoretically be one involving a prac-tical continuity of movement in interstate commerce, depending on, among other things, the intent of the shipper at the time shipment commenced, the role Defendants' drivers played, whether the water is altered during the fracking process, and the steps for water removal and outgoing transportation. Defendants, however, produced no evidence concerning these matters.

In short, Defendants have simply not met their burden to "plainly and unmistakably" show that the MCA exemption applies. *Friedrich*, 974 F.2d at 412.

### III

For the foregoing reasons, we will affirm the order of the District Court.

---

**11.** Defendants argue that they meet this burden because their intent "from the very beginning of the water transportation journey—is to transport the water to the disposal wells out of state." Appellant's Br. 13 (emphasis omitted). They, however, provide no evidence from which this intent can be gleaned. Moreover, the mere intersection of a company's activity and interstate commerce is not enough to warrant application of the MCA exemption. *See Packard*, 418 F.3d at 255 ("There is no general rule that once something ... embarks on a journey that will eventually carry it between two states, every moment of that journey, through the last conceivable moment of travel, is necessarily interstate transport under the MCA.").