**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3266
_____

DR. MAJA J. BUJ, M.D.,
                                        Appellant

v.

PSYCHIATRY RESIDENCY TRAINING;
ZEYNEP OZENCI, M.D., Trainee, Graduate of Turkey Med. School;
TSHERING BHUTIA, M.D., Trainee, Med Graduate of India Medical School;
RESHI AGGARWAL, M.D., Asst. Program Director; WEJID HUSSAIN, M.D. Trainee;
RUTGERS NEW JERSEY MEDICAL SCHOOL, Newark, NJ; NAJEEB HUSSAIN

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-17-cv-05012)
District Judge:  Honorable Claire C. Cecchi

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 18, 2021
Before:  MCKEE, SHWARTZ and RESTREPO, <u>Circuit</u> <u>Judges</u>

(Opinion filed June 9, 2021)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Dr. Maja Buj appeals from the United States District Court for the District of New Jersey's order granting summary judgment to defendant Rutgers, The State University of New Jersey ("Rutgers"). For the following reasons, we will affirm the District Court's judgment.

I.

Dr. Buj was born in 1960 in Belgrade, then located in Yugoslavia. She earned a general medical degree and a specialist degree in psychiatry and practiced medicine for several years before immigrating to the United States. She alleges that she has suffered or continues to suffer from disabilities related to post-traumatic spinal arthritis, linguicism, and complicated grief.[1]

By 2015, Dr. Buj successfully passed several United States Medical Licensing Examinations and began applying to psychiatry residency programs, including one at Rutgers New Jersey Medical School. Rutgers primarily secures psychiatry residents through the National Resident Matching Program, an annual nationwide program that uses an algorithm to place applicants at institutions. Applicants apply directly to institutions and institutions interview selected applicants. Applicants then rank their preferred institutions while institutions rank their preferred applicants. These lists are submitted to the Matching Program and both applicants and institutions are bound by the

---

[1] Dr. Buj argues that the District Court wrongly identified her post-traumatic spinal arthritis as post-traumatic stress disorder. But the District Court correctly identified her claimed disabilities elsewhere in its opinion and order when dealing directly with her ADA claim. And the exact nature of her disabilities was neither contested nor material to the District Court's legal analysis. Op. and Order Granting Mot. for Summ. J. ¶¶ 2, 15, ECF No. 105.

results of the matching process. If an institution does not fill all its available positions through the matching process or additional positions become unexpectedly available outside of the matching period, the institution can directly advertise and fill the out-of-match position.

Dr. Buj applied for an out-of-match position at Rutgers in May 2016. Rutgers selected another candidate for the position. In October 2016, Dr. Buj applied to Rutgers again as part of the regular match process. Rutgers officials informed her that she had been placed on the waitlist for interviews. A month later, they told her that she would not be invited to interview. Rutgers did not rank Dr. Buj on its submission to the Matching Program, so she did not match with Rutgers.

In July 2017, Dr. Buj filed a complaint in the District Court against Rutgers and several individual defendants, alleging discrimination based on religion, national origin, age, and disability.[2] ECF No. 1. She later agreed to dismiss her claims against the individual defendants and any claims for retaliation or emotional distress. ECF Nos. 40, 65. Remaining were claims against Rutgers for employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), and a claim under the "NJ ADAAA," which the District Court reasonably construed as a claim for disability discrimination under the New Jersey Law Against Discrimination ("NJLAD"). See 42 U.S.C. §2000e-2(a); 29 U.S.C. § 623; 42 U.S.C. § 12112; N.J. Stat.

---

[2] Dr. Buj named two institutional defendants that are part of Rutgers and are not separate legal entities. Letter from Appellee, 3d Cir. ECF No. 9.

Ann. 10:5-12. After discovery, Rutgers moved for summary judgment. The District Court granted the motion, holding that Dr. Buj did not meet her burden to make a prima facie showing that she was qualified for the positions sought, and that, even assuming she could establish a prima facie case, she could not meet her burden to rebut Rutgers' legitimate, non-discriminatory reasons for rejecting her applications or otherwise show discriminatory animus. Additionally, the District Court held that Dr. Buj could not show the requisite causation for her claims. Dr. Buj timely appealed. ECF No. 106.

## II.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment, applying the same standard that the District Court applies. Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 141 (3d Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[w]e view the facts and draw all reasonable inferences in the non-movant's favor," we will conclude that "[a] disputed issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 871 n.3 (3d Cir. 2015) (citation and quotation marks omitted).

## III.

Title VII and the ADEA prohibit discrimination in employment based on personal characteristics including religion, national origin, and age. When a plaintiff does not provide direct evidence of discrimination, as in this case, the "inquiry under both statutes

is governed by the three-part framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973)." <u>Burton v. Teleflex Inc.</u>, 707 F.3d 417, 425-26 (3d Cir. 2013).[3]  First, the plaintiff bears the burden of making out a prima facie case of discrimination.  <u>Id.</u> at 426.  The burden of production then shifts to the defendant to offer a legitimate non-discriminatory reason for the adverse employment action.  <u>Id.</u>  Finally, the burden shifts back to the plaintiff to "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination."  <u>Id.</u>  To defeat a motion for summary judgment at this third step, the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  <u>Id.</u> at 426-27 (quoting <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994)).

Even assuming, without deciding, that Dr. Buj made a prima facie showing of discrimination, she failed to rebut Rutgers' proffered non-discriminatory justifications for its treatment of her applications.  The doctors overseeing Rutgers' application process explained why they considered Dr. Buj a weak candidate for their program.  They cited

---

[3] Dr. Buj did not provide sufficient evidence of direct discrimination.  She alleges that, at a medical conference, participants in Rutgers' psychiatry residency program told her that as an "old graduate" she was unlikely to be accepted and made hurtful comments.  But she does not contend, let alone provide evidence, that these participants had any role in Rutgers' evaluation or selection of applicants.  See <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen</u>, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight.").

deficiencies and anomalies in several aspects of her applications, including unexplained aspects of her educational and examination history, poorly written personal statements, relatively short recommendation letters of limited relevance, and little U.S.-based psychiatry experience. Suppl. App. Vol. II 30, 35, 407, 410, 3d Cir. ECF No. 27. In response, Dr. Buj highlights potentially problematic aspects of other applicants' materials, but this cherry-picking overlooks offsetting strengths or explanations accounting for deficiencies in those applications. She also points to alleged inaccuracies in Rutgers' description of her applications, arguing that they reveal impropriety. But the alleged errors do not undermine the thrust of Rutgers' concerns and criticism.[4] Even if Dr. Buj's educational credentials and test scores might be competitive, the reviewing doctors' evaluations of her career history, personal statement, and letters of recommendation are supported by the record. Additionally, Dr. Buj's failure to obtain a residency position elsewhere supports these evaluations. Cf. Hankins v. Temple Univ. (Health Scis. Ctr.), 829 F.2d 437, 444 (3d Cir. 1987) ("[C]ourts are generally ill-equipped to review subjective academic appraisals of educational institutions.").

After reviewing the record, we agree with the District Court that no reasonable jury could find that Dr. Buj rebutted Rutgers' non-discriminatory explanation that the

---

[4] For instance, Rutgers' evaluators expressed concern that Dr. Buj took eleven years to complete her first medical degree, when a traditional program last four years. Suppl. App. Vol. II 30, 35, 407, 410, 3d Cir. ECF No. 27. Dr. Buj correctly argues that her application materials showed the program in Belgrade was designed to last five years, but the same materials confirm that she completed the program over eleven years. Appellant's Pro Se Brief, at p.2; 3d Cir. ECF No. 12. While there may be a reasonable explanation for that course of study, there is no evidence in the record that Dr. Buj provided any explanation to Rutgers at the time of her applications.

selecting physicians reasonably evaluated Dr. Buj as less qualified than other applicants. Dr. Buj disagrees with their evaluation, but her disagreement does not demonstrate pretext.  See Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991), overruled in part on other grounds by St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993) ("The fact that an employee disagrees with an employer's evaluation of him does not prove pretext.").

Summary judgment is appropriate on Dr. Buj's remaining claims for similar reasons.  To establish a prima facie case for employment discrimination under the ADA, a plaintiff must show (1) that she is disabled within the meaning of the ADA, (2) that she is otherwise qualified for the job, with or without reasonable accommodations, and (3) that she was subjected to an adverse employment decision as a result of discrimination. Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 185 (3d Cir. 2010).  No reasonable jury could find on this record that Dr. Buj did not obtain a residency with Rutgers as a result of disability-related discrimination.  The record supports Rutgers' non-discriminatory reasons for rejecting Dr. Buj's applications.  Any claim under the NJLAD would fail for the same reasons that the Title VII, ADEA, and ADA claims failed.  See Chisolm v. McManimon, 275 F.3d 315, 324 n.9 (3d Cir. 2001) ("New Jersey courts typically look to federal anti-discrimination law in construing NJLAD."); Viscik v. Fowler Equip. Co., 800 A.2d 826, 833 (N.J. 2002).[5]

IV.

---

[5] We need not and do not rely on the alternative ground of causation argued by Rutgers and adopted by the District Court.  See Munroe v. Central Bucks Sch. Dist., 805 F.3d 454, 469 (3d Cir. 2015) (We "may affirm on any ground supported by the record.").

Accordingly, we will affirm the judgement of the District Court.[6]

---

[6] Both parties have moved to seal portions of their submissions. While there is a strong presumption of public access to judicial records, the sensitive application materials of other applicants to Rutgers' residency program, who are not parties to this case, constitute "the kind of information that courts will protect," and the parties have adequately explained the potential harm to those third parties and to the parties themselves. In re Cedant Corp., 260 F.3d 183, 194 (3d Cir. 2001). Dr. Buj's motion to file her appendix materials under seal, 3d Cir. ECF No. 18, and Rutgers' motion to file portions of its brief and Volume III of its supplemental appendix under seal, 3d Cir. ECF No. 24, are granted as follows: these materials sought to be sealed shall be sealed for 75 years.